

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-18-2000

# S. v. Scranton School Dist.

Precedential or Non-Precedential:

Docket 00-3050

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"S. v. Scranton School Dist." (2000). *2000 Decisions*. Paper 224.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/224

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 18, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3050

DANIEL S., a minor by his parents and next friends,
Cynthia and Scott S.; CYNTHIA S.; SCOTT S., on their
own behalf

v.

SCRANTON SCHOOL DISTRICT,

    Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. No. 98-cv-00243)
District Judge: The Honorable A. Richard Caputo

ARGUED July 18, 2000

BEFORE: BECKER, Chief Judge, SLOVITER, and
NYGAARD, Circuit Judges.

(Filed October 18, 2000)

        Harry P. McGrath, Esq. (Argued)
        Suite 532, 538 Spruce Street
        Scranton Life Building
        Scranton, PA 18503
         Attorney for Appellant

        Mary A. Clausen, Esq. (Argued)
        R.D. #1, P.O. Box 1494
        Saylorsburg, PA 18353
         Attorney for Appellees

OPINION OF THE COURT

NYGAARD, Circuit Judge.

In this case, filed under the Individuals with Disabilities Education Act, 20 U.S.C. SS 1400-1490, the Scranton School District appeals from an order granting attorneys' fees to the parents of Daniel S. under S 1415(i)(3)(B) of the Act. The School District argues that the meeting for which attorneys' fees were awarded was not "convened as a result of an administrative proceeding or judicial action," and that the fee award was thus barred by the Act. We disagree, and will affirm the District Court's order.

I. Background Law

Congress enacted the Individuals with Disabilities Education Act to ensure that educational programs were available to children with disabilities, to enable responsible educational authorities to provide appropriate educational programs, and to assure the effectiveness of such programs. See 20 U.S.C. S 1400(d). To that end, the Act provides financial assistance to states that comply with its requirements. See id. SS 1411, 1412. One provision requires each participating state to identify and evaluate the needs of all children residing within its borders who are disabled and who need special education or related services. See id. S 1412(a)(3)(A).

Once the state has identified and evaluated a disabled child in need of special education and related services, it must have an Individual Educational Program (IEP) in effect for that child at the beginning of each school year. See id. S 1414(d)(2)(A); see also id. S 1414(d)(1)(A) (identifying the required components of an IEP). Each IEP is designed by an "IEP Team" composed of the parents of the child, a multi-disciplinary collection of appropriately qualified educational professionals, and, when appropriate, the child. See id. S 1414(d)(1)(B).

The Act requires participating states to establish a comprehensive set of procedural safeguards designed to

2

protect the interests of all parties. See id. S 1415. One such safeguard allows parents who have lodged complaints about the identification, evaluation, placement, or IEP development processes to request an impartial administrative due-process hearing. See id.S 1415(f)(1). If the hearing is conducted by a local educational agency, any party aggrieved by its findings and decision may appeal to the state educational agency. See id. S 1415(g). If, however, the hearing is conducted by the state educational agency, an aggrieved party may bring a civil action in a state court of competent jurisdiction or in federal district court. See id. S 1415(i)(2).

In addition to granting other appropriate relief, a court may, in its discretion, "award reasonable attorneys' fees to the parents of a child with a disability who is the prevailing party." Id. S 1415(i)(3)(B). Following a 1997 amendment, however, "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened, [inter alia], as a result of an administrative proceeding or judicial action." Id.S 1415(i)(3)(D)(ii) (emphasis added). It is this limitation, and its application to a specific IEP Team meeting, that is at issue in this appeal.

II. Background Facts & Procedure

In December 1996, the Scranton School District identified Daniel S. as a student in need of special educational services. An IEP Team consisting of Daniel's parents and education professionals engaged in a series of meetings intended to produce an IEP for Daniel. The School District then presented Daniel's parents with an IEP, which they rejected. The School District again presented the same IEP, which Daniel's parents again rejected.

Sometime during the summer of 1997, the advocate representing Daniel's interests in the IEP process contacted Mary Anne Clausen, a private attorney specializing in education law. See App. at 191:15-23. Thereafter, Daniel's advocate "from time to time asked [Clausen] a few questions about things" concerning the effort to develop an acceptable IEP for Daniel. See id.

3

In August, the IEP Team met again, but again failed to produce a mutually acceptable IEP. The School District then requested an administrative due-process hearing to determine the adequacy of the IEP it was offering Daniel. A hearing was scheduled, and, in the interim, Daniel's parents decided it would be best to teach him at home until an appropriate IEP was in place at school.

While awaiting the hearing, Daniel's mother contacted Attorney Clausen directly concerning truancy proceedings that the School District had initiated against Daniel. See id. at 192:8-193:15. Attorney Clausen had further conversations on the truancy matter with Daniel's mother and with his advocate in the ensuing weeks. See id. at 194:20-195:15. Ultimately, Attorney Clausen performed a few minor legal services on Daniel's behalf regarding the truancy proceedings against him. See id. at 196:2-197:9.

In September, the IEP Team then met again for a third time, but again failed to produce a mutually acceptable IEP for Daniel. Shortly thereafter, the School District presented his parents with a revised IEP that conceded to some, but not all, of their demands. In response, Daniel's mother sent the School District a letter explaining why she was dissatisfied with the latest IEP and setting forth her remaining demands. See id. at 197:15-22; 203:11-19; 207:16-18.

Daniel's parents asked Attorney Clausen to represent them in their continuing battle with the School District over Daniel's IEP. See id. at 197:23-198:1. In the hope that the parties would be able to resolve the matter without her assistance, Attorney Clausen refused to represent them until after they had received a response to their letter. See id.

In October, the School District sent Daniel's parents yet another version of the IEP, conceding to some, but again not all, of the demands expressed in their previous letter. Thereafter, Attorney Clausen "entered into a retainer agreement [with Daniel's parents] to negotiate on their behalf at that point in time and to see if we could get a settlement of the matter for them." Id. at 198:13-24. Daniel's parents rejected the School District's latest IEP

4

and, on the same rejection form, checked a box requesting a due process hearing. See id. at 479.

Attorney Clausen called the School District's attorney and requested a "settlement conference" to break the impasse. More specifically, she explained that the efforts to produce a mutually acceptable IEP for Daniel "had been ongoing for a long time" and that she would "like to try to settle it rather than going to due process." Id. at 212:24–213:4. The School District's attorney agreed, and the parties met on October 20 and signed an attendance sheet labeled "Settlement Conference." See id. at 46.

The School District made a number of concessions at the conference and, in the course of the ensuing few days, made several more. As a result, the parties produced a mutually acceptable IEP that Daniel's mother signed. The request for a due-process hearing was then withdrawn. Shortly thereafter, Attorney Clausen asked the School District to pay her fees related to the October 20 settlement conference and subsequent services rendered on Daniel's behalf. When the School District refused, Daniel's parents filed a civil action in the District Court for the Middle District of Pennsylvania. Following a bench trial, the District Court entered an order awarding attorneys' fees to Daniel's parents.

In a memorandum explaining its order, the District Court found that the October 20 conference was not a settlement conference at all. In "the Court's view," because everyone who attended the meeting, with the exception of Attorney Clausen, was a member of the IEP Team, "regardless of what the meeting was labeled, it was a meeting of the IEP Team within the meaning of the Act." Dist. Ct. Mem. of 02/12/1999 at 3. The District Court also concluded that the School District's request for a due process hearing had "initiated" an "administrative proceeding." Id. at 5. The court further concluded that "[g]iven the initiation of that proceeding, and the impending hearing, it is inescapable that the meeting of October 20, 1997 . . . was convened as a result of the administrative proceeding." Id.

The District Court concluded:

5

> It seems quite clear . . . that counsel fees may be awarded in any instance where a party prevails as a result of an IEP team meeting which is convened as a result of an administrative proceeding. Such is exactly what occurred here, and therefore fees will be awarded to . . . plaintiff 's counsel.

Id. at 6. The School District disagrees that the meeting was "convened as a result of an administrative hearing," and appeals from the order awarding Attorney Clausen's fees.

III. Discussion

The sole issue raised in this appeal is whether the 1997 amendment of the Act bars this award of attorneys' fees. The parties both contend that "[t]his case isfirst and foremost a matter of statutory construction." Appellee's Br. at 10; see also Appellant's Br. at 12 ("The Appellant believes that the language of S 1415(i)(3)(D)(ii) is clear, unambiguous and therefore no further analysis is required."). To a degree, they are correct. But resolution of this issue ultimately does not turn on a question of law. The operative statutory phrase calls for the Court to determine if the IEP team meeting was "convened as a result of an administrative proceeding," thus raising a question of causation.

In applying the pre-1997-amendment version of S 1415, we have held that causation can be established on either of two theories. See Wheeler v. Towanda Area School Dist., 950 F.2d 128, 132 (3d Cir. 1991) (considering when litigation is casually connected to the relief obtained by a prevailing party). In the context of pre-amendmentS 1415, litigation was held to be causally connected to the relief if it either produced that relief directly (i.e., through a favorable judgment), or, under an alternative "catalyst" theory, if "the pressure of the lawsuit was a material contributing factor in bringing about extrajudicial relief." Id. (citations omitted).

In the context of this case, an administrative proceeding can be causally connected to the prevailing party's relief if the pressure of the proceeding was a material contributing factor in bringing about the relief sought and ultimately

6

obtained by the child's parents. Thus, the real question in this case is one of fact: was the scheduled due process hearing the catalyst for the October 20 meeting that ultimately produced a mutually acceptable Program for Daniel?

The School District takes no issue with the District Court's conclusion that the October 20 meeting was an IEP Team meeting, but argues, essentially, that an IEP Team meeting can never be convened as a result of an administrative hearing that has not yet occurred. See Appellant's Br. at 10. That is incorrect. An administrative hearing need not actually have occurred for it to be the cause of an IEP Team meeting. The mere threat of a scheduled hearing alone may induce opposing parties to agree to meetings in which they would not otherwise have participated, if only to avoid the cost, burden and uncertainty of the hearing itself. Cf. Sullivan v. Pennsylvania Dep't of Labor & Indus., 663 F.2d 443 (3d Cir. 1981) (finding the requisite causal link to recover attorneys' fees on Title VII claim where EEOC complaint caused union to take case to arbitration where relief was ultimately granted).

Despite a series of IEP Team meetings, as well as exchanges in writing and by telephone, the parties were unable to produce a mutually acceptable IEP for Daniel. By September 3, the School District had determined that the Program it was offering Daniel was appropriate, and that IEP Team meetings were becoming "off focus" and "counterproductive." App. at 336:19–23. In short, it, too, had lost confidence in the IEP Team process, and had decided that a due process hearing would likely be necessary to break the impasse. Thereafter, the parties held one more "regular" IEP Team meeting on September 30.

The October 20 meeting at issue was unlike the previous meetings in several significant respects. First, by the time the October 20 meeting was scheduled Daniel's parents had made their own request for a due process hearing, implying that they believed the IEP Team process had broken down. Second, whereas all prior meetings had been scheduled by the parties themselves following the notice requirements set forth in the Act, the October 20 meeting was scheduled by

the parties' respective attorneys. Third, although the attorneys did not attend any of the previous meetings, and Daniel's attorney declined to become directly involved in the IEP process until it was clear that the IEP Team was deadlocked and an administrative hearing was imminent, both attorneys attended the October 20 meeting. See App. at 46. As noted, the District Court concluded that the School District's September 3 request for a due process hearing "initiated" an administrative proceeding. See Dist. Ct. Mem. of 02/12/1999 at 5.

We reject the parties' invitation to formulate a bright-line test for determining when an IEP Team meeting results from an administrative proceeding. Under Appellant's proffered test, an IEP Team meeting would never result from an administrative proceeding if it occurs before the administrative proceeding has actually been convened. Conversely, Appellees ask us to hold that an IEP Team meeting results from an administrative proceeding any time it occurs after the administrative proceeding has been requested, whether or not the requested proceeding was the catalyst for the meeting in question. We reject both tests, and hold that whether a particular IEP Team meeting results from an administrative proceeding is first a factual question of causation, opening the District court'sfindings to our review for clear error. Thereafter, the decision to award fees remains within the discretion of the court. See 20 U.S.C. S 1415(i)(3)(B), which we review for an abuse in the exercise of its discretion.

Against this factual backdrop, we see no error in the District Court's finding the meeting was convened as a result of the pending administrative hearing, nor in its determination that the pending due process hearing was the catalyst for the October 20 IEP Team meeting. Looking at the facts, we cannot accept the School District's claims that it was merely being proactive when it filed its September 3 request for a due process hearing. The evidence is to the contrary. The record indicates that by the time the School District requested a due process hearing it had concluded that the IEP Team process had become unfocused and counterproductive. Although it subsequently scheduled one final IEP Team meeting for September 30,

8

that meeting was also unproductive. By the time the parties scheduled the October 20 meeting, all involved believed the IEP Team process had reached an impasse and that a due process hearing was imminent without the successful intervention by their attorneys. Accordingly, we conclude that the District Court's finding that the October 20 meeting was convened as a result of the due process hearing scheduled for November 10 is fully supported by the evidence. Upon that finding, an award of attorney fees was well within its discretion.

IV. Conclusions

We hold that the District Court did not err in finding, as a matter of fact, that the IEP Team meeting at issue in this case was convened as a result of an administrative proceeding, nor did it abuse its discretion by awarding fees. Accordingly, we will affirm the District Court's order.

BECKER, Chief Judge, concurring in the judgment:

Under the 1997 amendments to IDEA, on which the School District relies, "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action." 20 U.S.C. S 1415(i)(3)(D)(ii). Consequently, the School District can prevail only if: (1) the October 20 meeting was one of Daniel's IEP Team; and (2) the meeting was not convened as a result of an administrative proceeding or judicial action. The Court agrees that the October 20 meeting was an IEP Team Meeting, but affirms the District Court's judgment awarding fees because it concludes that the meeting took place as a result of the due process hearing scheduled for November 10.

The linchpin of the Court's holding is its conclusion that the District Court's "factual" finding "that the pending due process hearing was the catalyst for the October 20 IEP Team meeting" was not clearly erroneous. See opinion of the Court at 8. I disagree. No administrative proceeding ever took place, and none was even scheduled to occur prior to November 10--three weeks after the October 20 meeting. While the October 20 meeting may have occurred as a result of the School District's decision to initiate the administrative process and in anticipation of the scheduled due process hearing, the statute simply does not refer to IEP Team Meetings "convened as a result of the initiation of an administrative process" or "convened in anticipation of an administrative proceeding."

On the other hand, I also believe that--under any standard of review--the October 20 meeting was not an IEP Team Meeting. IDEA contains no definition of the phrase "meeting of the IEP Team." Absent a definition or other controlling authority, I would hold that parties may clearly designate a meeting as a settlement conference rather than an IEP Team Meeting, and I believe that that precept is satisfied in this case. The October 20 meeting was scheduled by counsel for the parents as a settlement conference, and, with the exception of the parents' attorney, every person at the October 20 meeting signed a sheet referring to it as a "Settlement Conference." Although

10

lawyers are not designated as being part of an IEP Team, two attorneys (one for the parents and one for the School District) attended the October 20 meeting.

The impetus for and subject of the meeting was likewise closer to that of a settlement conference than of an IEP Team meeting because the parties were, at that point, trying to avoid the need for a due process hearing, rather than simply attempting to arrive at an IEP that was best for Daniel. In addition, the School District did not give the parents formal notice of the October 20 meeting-- something that Pennsylvania law explicitly requires it to do before an IEP Team Meeting. I therefore conclude that the October 20 meeting was not an IEP Team Meeting within the meaning of IDEA, and would affirm the judgment on this ground.

I.

To explain the rationale behind the conclusions I reach, it is necessary to recapitulate the chronology of events. In December 1996, the Scranton School District identified Daniel S. as a "child with a disability" as that term is defined under IDEA. With the assistance of Daniel's parents, the School District prepared a comprehensive evaluation of Daniel's disabilities. When Daniel's IEP Team began meeting, however, it could not agree on a plan for him. Without an IEP in place, Daniel was forced to remain out of school between January and November of 1997.

During those ten months, Daniel's parents and other members of his IEP Team met or had discussions on numerous occasions. IEP Team Meetings took place on April 1, April 29, and August 27, 1997, but the Team was unable to agree on an IEP because Daniel's parents felt that none of the proposals adequately accounted for his special needs. In early September, the School District officially requested a due process hearing at which an independent third party would be asked to determine Daniel's fate. In an effort to avoid this result, the IEP Team met one more time on September 30, 1997. Daniel's parents rejected the IEP proposed at the meeting and hired an attorney, Mary Ann Clausen, to represent them at the due process hearing.

11

With the due process hearing scheduled for November 10, 1997, Clausen contacted the School District and requested that a meeting be held in an attempt to resolve matters before the hearing. In scheduling the meeting, Clausen characterized it as a "settlement conference," and counsel for the School District did not object to this characterization. The parties, including most of Daniel's IEP Team, assembled on October 20, 1997. This was first time that lawyers for both the School District and Daniel's parents attended a meeting regarding Daniel. All of the parties (except Clausen) at the October 20 meeting signed an attendance sheet labeled with the heading "Settlement Conference." The parties discussed Daniel's IEP, but came to no agreement regarding Daniel's educational plan.

The October 20 meeting proved fruitful, for it paved the way for further informal conversations and exchanges of information between the parties. Based on these exchanges, an IEP was agreed upon and signed by Daniel's mother on October 31, 1997. The IEP that Daniel's mother signed was more favorable to Daniel than the School District's previous proposals had been. With the October 31 agreement in effect, the adversarial proceeding scheduled for November 10 was rendered unnecessary.

II.

Because the District Court concluded that the October 20 meeting was one of Daniel's IEP Team, it was required to consider whether the meeting was "convened as a result of an administrative proceeding." 20 U.S.C. S 1415(i)(3)(D)(ii). The Court reasoned that the October 20 meeting was "convened as a result of " the School District's decision to request the due process hearing scheduled for November 10 and in anticipation thereof. Specifically, Court stated that:

> [g]iven the initiation of that proceeding, and the impending hearing [on November 10], it is inescapable that the meeting of October 20, 1997 which resulted in an acceptable plan on October 31, 1997, was convened as a result of the administrative proceeding. There appears to be no other requirement under the plain meaning and plain language of the statute.

12

The Court agrees with the District Court, characterizing the inquiry as "a factual question of causation" reviewable for clear error. Opinion of the court at 8. I disagree.

The key question is whether an IEP Team Meeting can be convened as a result of a due process hearing that has not yet taken place. This is a question of law because it involves statutory interpretation. And because it is a question of law, the appropriate standard of review is de novo.1 See United States v. Zwick, 199 F.3d 672, 678 (3d Cir. 1999) ("We exercise plenary review over questions of statutory interpretation."). Neither the Supreme Court nor any court of appeals has previously considered this issue. Absent binding precedent, we must follow the Supreme Court's repeated admonition that where a statute's text is clear, the task of interpretation begins and ends there. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999).

The relevant portion of the statutory text refers to IEP Team Meetings "convened as a result of an administrative proceeding." There is no dispute that the due process hearing scheduled to take place on November 10 would have qualified as an "administrative proceeding" within the meaning of IDEA. The question, therefore, is whether the October 20 meeting was "convened as a result of " the due process hearing scheduled for November 10. In the absence of a statutory definition or some other compelling reason, we interpret the words of a statute in accord with their ordinary meaning. Result means "a consequence, effect, issue, or conclusion." Webster's Third New International Dictionary 1937 (1966). An event (such as an IEP Team Meeting) cannot be a "consequence" of another event (such as a due process hearing) that has not yet occurred nor can an "effect" precede its purported cause.

This common sense interpretation is supported by the ways in which the phrase "as a result of " is used in other sections of the United States Code. Its only other use in

_____

1. I agree with the Court that if, as a matter of law, an IEP Team Meeting can occur "as a result of " a due process hearing that has not yet taken place, the question whether a particular IEP Team Meeting did so occur would be a question of fact that would be reviewable for clear error. See opinion of the Court at 8.

13

IDEA provides that "[a]s a result of more than 20 years of Federal support for research . . . , there is an important knowledge base for improving results for children with disabilities." 20 U.S.C. S 1471(a)(2)(A). Other provisions of the United States Code use "as a result of " in a similar manner--i.e., one that makes clear that an event may not be the result of another event that has yet to occur.2

I can think of but three ways, none of them satisfactory, to blur this clear statutory language. The first would be to read the statute as saying "unless such meeting is convened as a result of the initiation of or request for an administrative proceeding." The second would be to read the statute as saying "unless such a meeting is convened in anticipation of an administrative proceeding." The problem, of course, is that these alternate formulations are simply not in the statute and their insertion would substantively alter its meaning. A final possibility would be to conclude that the commencement of the administrative proceedings took place when the School District requested the due process hearing. But this argument ignores the fact that the statute does not say "administrative process," it says "administrative proceeding," and the only administrative proceeding that even potentially qualifies in this case never occurred.

The only judicial decisions I have been able to locate dealing with this issue support my reading of the statute. The first, M.V. v. Gordon, No. 98 C 8408, 1999 WL 417394 (N.D. Ill., June 15, 1999), involved a 13-year-old boy who had been diagnosed with Attention Deficit Hyperactivity Disorder. M.V. was suspended from school after he engaged in what seems to have been highly inappropriate behavior. His parents submitted a request for a due process hearing.

_____

2. See, e.g., 5 U.S.C. S 1103(b)(3) (relaxing publishing requirements for new federal regulations that are "temporary in nature and [are] necessary to be implemented expeditiously as a result of an emergency"); 8 U.S.C. S 1440-1(b) (allowing for posthumous grant of citizenship to certain noncitizens who served in the United States armed forces and "died as a result of injury or disease incurred in or aggravated by that service"); 10 U.S.C. S 829(a) (stating that members of a court martial may not be "absent or excused after the court has been assembled for the trial of the accused unless excused as a result of a challenge").

14

An IEP Team Meeting was convened and a settlement was reached that rendered the due process hearing unnecessary. Id. at *1. The parents thenfiled an action to recover attorneys fees "relating [to] IEP meetings." See id. at *2. The court granted the school district's motion to dismiss, finding the language of the 1997 amendments "clear and unambiguous." Id. Responding to the parents' claim "that it was their request for a due process hearing . . . that was the `catalyst for the relief obtained,' " the court stated:

> Plaintiffs have not demonstrated how the hearing request alone entitles them to fees. Although Plaintiff[s] cite cases which granted recovery of fees in similar situations [citing the parents' brief], those cases pre-date the 1997 IDEA amendments which now clearly limit recovery of fees Plaintiffs seek unless they are the result of "an administrative proceeding or judicial action." Plaintiffs have not established that the[School] District convened the IEP meeting as a result of an "administrative proceeding." On the contrary, Plaintiffs' own allegations reveal that the [School] District took a proactive role at an early opportunity thereby removing the need for administrative proceedings.

Id. at *3. Accordingly, the court denied the request for attorneys fees. See id.

The case most heavily relied upon by Daniel's parents, F.R. v. Board of Education, 67 F. Supp. 2d 142 (E.D.N.Y. 1999), provides little support for their claim that attorneys fees may be awarded in this case. Although the Court in F.R. awarded fees for work done prior to a due process hearing, the fees requested were not intended to compensate an attorney for attending an IEP Team Meeting. The court noted that:

> [P]laintiffs do not seek fees in connection with their attorney's presence at the CSE meetings held to develop and modify [the child's] IEP. . . . Instead . . . [the] fees sought to be reimbursed relate to attorney work performed in connection with investigation of the case, discussions with opposing counsel, client meetings and preparations of requests for impartial hearings.

15

Id. at 148 (emphasis added). In contrast, as the facts are interpreted by the Court, this case involves a request for fees for attending an IEP Team Meeting. F.R. provides no support that such fees are recoverable after the 1997 amendments.[3]

III.

The rule announced by the Court today will undermine the goal of the 1997 amendments, which was to make IDEA less costly for local school districts. The (admittedly limited) means chosen to accomplish this goal involved restricting the ability of parents to recover attorneys fees associated with attendance at IEP Team Meetings. The causation test adopted by the Court will allow one party (parents, or, more accurately, their lawyers) to undermine these limits unilaterally by requesting a due process hearing early on so that they can claim that any subsequent IEP Team Meetings occurred as a result of that request. Even if courts often reject such claims on the grounds that a causal connection between the request for a hearing and the resolution of the dispute is lacking, the litigation over fees will itself be costly and time-consuming for school districts.

On the other hand, a rule that attorneys fees are never recoverable for any meeting that occurs prior to an administrative proceeding would likewise undermine the purpose of the 1997 amendments. The costs of paying for parents' attorneys to attend a successful settlement conference will almost always be lower than the costs associated with their attendance at a due process hearing. But if parents' lawyers could not recover fees for attending settlement conferences but could recover them for attending due process hearings, then they would lack an incentive to try to settle disputes prior to a hearing.

_____

3. The only other cases cited by the parties are unhelpful in resolving this issue. In Lucht v. Molalla River School District, 57 F. Supp. 2d 1060, 1062 (D. Ore. 1999), the IEP Team Meeting for which the parents demanded fees occurred after a due process hearing had taken place. And Christopher P. v. Upper Merion Area School District, No. CIV A. 99-402 (E.D. Pa., Jan. 19, 2000), does not discuss the impact of the 1997 amendments.

16

Accordingly, an ideal system to hold down overall costs
must take account of (and encourage) bona fide settlement
conferences.

I believe that the best way to hold down overall costs is
to allow parties to designate meetings as settlement
conferences rather than IEP Team Meetings. The special
education world is largely made up of sophisticated, repeat-
player counsel for both parents and school districts. A clear
rule that attorneys fees are not recoverable for pre-hearing
meetings unless the parties agree that the meeting is a
settlement conference rather than an IEP Team Meeting
would allow the parties to agree ex ante whether a given
meeting may later be subject to a claim for fees. School
districts will not agree to a settlement conference, however,
unless and until they conclude that further resort to the
non-adversarial IEP process is unlikely to yield agreement.
Accordingly, settlement conferences will be held only when
the choice has truly become one between settlement and a
formal hearing, and, under such circumstances, IDEA's
policy of holding down costs is served by allowing recovery
of fees.

IV.

There is neither statutory language nor substantial case
law defining what constitutes an IEP Team Meeting. 4 But

_____

4. The phrase "meeting of the IEP Team" is contained only in the 1997
amendments. 20 U.S.C. S 1415(i)(3)(D)(ii). IDEA defines the "IEP Team"
as "a group of individuals composed of " the child's parents, certain
teachers, other persons trained in working with children with
disabilities, other individuals familiar with the child and the local
curricular offerings, and, whenever appropriate, the child him- or
herself.
Id. S 1414(d)(1)(B). The IEP Team is charged with developing and revising
a child's IEP and must consider certain factors. Individual members of
the IEP Team are given certain responsibilities. See id. S 1414(d)(3-5).
Other provisions of the statute instruct the IEP Team to consider
particular data or attach consequences to determinations made by the
IEP Team. See S 1414(c)(1); id. S (2); id. S (4); id. S (d)(1)(A)(v)(I);
id.
S (vii)(II); id. S 1415(k)(1)(B)(ii); id. S (3)(A); id. S (4)(B-C). One
Section
attaches specified consequences to a failure of the child's parents to
inform the IEP Team that they are rejecting a proposed placement for
their child. See id. S 1412(a)(10)(C)(iii)(I)(aa). Nowhere, however, does
the
statute provide real guidance for determining whether a meeting is one
of the IEP Team.

absent controlling authority to guide us, I would hold, for the reasons stated above, that parties may designate a meeting as a settlement conference rather than an IEP Team Meeting. Because I believe that under any standard of review the parties did so in this case, I conclude that the parents' request for attorneys fees is not barred by the 1997 amendments, and I would affirm the District Court's order granting fees on this alternate ground.

The District Court held that the October 20 meeting was an IEP Team Meeting. See A28 ("It is therefore the Court's view that regardless of what the meeting was labeled, it was a meeting of the IEP team within the meaning of the Act."). The Court agrees.[5] See opinion of the Court at 5, 7. I do not.

The first question, which the Court does not even address, is the appropriate standard for reviewing the District Court's decision that the October 20 meeting was one of Daniel's IEP Team. Some of the District Court's statements, i.e., those about the identities of the people at the meeting, the fact that they signed a sheet titled "Settlement Conference," and the matters discussed at the meeting, are findings of fact that should be reviewed for clear error. On the other hand, the meaning of the phrase "meeting of the IEP Team" is a legal question that should be reviewed de novo. I need not determine the appropriate standard for reviewing the District Court's application of

_____

5. Curiously, the Court appears to suggest that this issue is not before us because "[t]he School District takes no issue with the District Court's conclusion that the October 20th meeting was an IEP Team Meeting." Opinion of the Court at 7. While this observation is true--after all, the School District cannot prevail on this appeal unless the October 20 meeting was one of Daniel's IEP Team--it is also irrelevant. The School District has appealed the District Court's judgment awarding attorneys fees to the parents. Before this Court, the parents argue, inter alia, that we should affirm the District Court's judgment because the October 20 meeting "was not an IEP team meeting." Because a party that ultimately prevailed before a district court may urge affirmance on different grounds, this issue is properly before us. See Alvin v. Suzuki, No. 99-3245, 2000 WL 1281478, at *1 (3d. Cir., Sept. 12, 2000) (affirming a district court's decision to grant summary judgment against a plaintiff alleging a procedural due process violation on different grounds from those articulated by the district court).

the law to the facts, however, because I conclude that under any standard of review the District Court erred in holding that the October 20 meeting was one of Daniel's IEP Team.

I will begin with the objective evidence. Although IDEA provides no definition for the phrase "meeting of the IEP Team," there are, as I see it, three characteristics of such meetings that inform the inquiry, and each of these factors supports the conclusion that the October 20 meeting was a settlement conference rather than an IEP Team Meeting. The first characteristic of an IEP Team Meeting is the identities of those in attendance. Unlike every previous meeting of Daniel's IEP Team (a series of four meetings spanning six months), counsel for both parties attended the October 20 meeting. Lawyers are not mentioned in the section of IDEA listing members of an IEP Team. See 20 U.S.C. SS 1414(d)(1)(b)(i)-(vii). In contrast, lawyers are mentioned in the section of IDEA providing for the procedural rights that parents must be accorded at due process hearings. See id. S 1415(h).

Further, as the admittedly sparse legislative history to the 1997 amendments demonstrates, IEP Team Meetings are meant to be fora at which parents and school administrators--outside the presence of counsel and the threat of litigation--can resolve their differences and arrive at an IEP best suited to the disabled child's interests. See H.R. Rep. No. 105-95, at 105 (1997), reprinted in 1997 U.S.C.C.A.N. 78, 103 ("The Committee believes that the IEP process should be devoted to determining the needs of the child and planning for the child's education with parents and school personnel. To that end, the bill specifically excludes the payment of attorneys' fees for attorney participation in IEP meetings, unless such meetings are convened as a result of an administrative proceeding or judicial action."). Thus, in terms of participants, the October 20 meeting was more like a settlement conference arranged in anticipation of a due process hearing than a typical IEP Team Meeting.

In its conclusory disagreement, the Court appears to adopt the District Court's reasoning that because"the parties in attendance, with the exception of Ms. Clausen,

19

were members of the IEP team," the meeting was inherently "a meeting of the IEP team within the meaning of the Act." This seems wrong to me for two reasons. First, it glosses over the fact that attorneys for both parties were present[6] (which, for the reasons explained above, is highly significant). Second, it assumes that any meeting including the members of a child's IEP Team is a "meeting of the IEP Team" within the meaning of IDEA. But individuals who make up the membership of a group may meet without thereby convening the group. The panel of this Court, for example, could surely go out for a social lunch without constituting the United States Court of Appeals for the Third Circuit. While I recognize that the purpose of the October 20 meeting was to agree on a satisfactory IEP for Daniel (which is, at least, related to the normal purpose of an IEP Team meeting), this does nothing to undercut the argument that the mere presence of members of the IEP Team cannot be decisive.

A second characteristic of an IEP Team Meeting is its subject matter. As the District Court noted in its opinion, the parties did meet to discuss Daniel's IEP. In fact, there was pressure to agree upon the IEP because neither party wanted to go through a due process hearing and risk losing control over the outcome while incurring the costs of presentation before an administrative tribunal. Thus, while the basic subject matter of the October 20 meeting was consistent with IEP Team Meetings in general, the chemistry of the meeting was transformed by the presence of negotiating counsel. In short, the meeting was more like the settlement conference it had been titled by the parties than like an IEP Team Meeting.

A final characteristic of IEP Team Meetings--at least in Pennsylvania, and not present in this case--is the type of notice school districts must provide parents before scheduling a meeting. Pennsylvania law requires that

_____

6. The District Court's statement that all those in attendance except Clausen (the parents' lawyer) were members of Daniel's IEP Team appears to be clearly erroneous. The statement of undisputed facts submitted by the parties states that counsel for the School District, who was not a member of Daniel's IEP Team, was also present.

school districts formally notify parents when IEP Team Meetings will be held. See 22 Pa. Code 342.32(c)(2). This notice must inform the parents of the IEP Team Meeting's purpose as well as who will be in attendance. See id. The undisputed record reflects that the School District did not provide such notice to Daniel's parents before the October 20 meeting.

In addition, other aspects of the parties' conduct support the view that the October 20 meeting was a settlement conference rather than an IEP Team Meeting. The meeting was arranged when Clausen (counsel for the parents) contacted counsel for the School District. Clausen's letter suggesting a meeting referred to it as a "settlement conference," and the response by the counsel for the School District never objected to this characterization. Furthermore, each person in attendance (including counsel for the School District but excluding Clausen) signed a sheet of paper titled "Settlement Conference." Whether or not these two references standing alone would establish as a matter of law that what took place on October 20 was not an IEP Team Meeting, I can reach no other conclusion when the evidence is considered in its entirety. I therefore would affirm the District Court's judgment on this alternate ground.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

21