**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――――

No. 18-3320

―――――――

HUGO ABRAHAM AGUILAR,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

―――――――――――――

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(BIA No.:  1: A206-194-739)
Immigration Judge:  Irma Lopez Defillo

―――――――――――――

Argued on March 10, 2020

Before: McKEE\*, AMBRO\*\*, and PHIPPS, <u>Circuit Judges</u>


(Opinion Filed: July 10, 2024)


Thomas S. Jones
Kevin C. Meacham **[Argued]**
Nelson Mullins
6 PPG Place
7th Floor
Pittsburgh, PA  15222

*Counsel for Petitioner*


Walter Bocchini **[Argued]**
Thankful T. Vanderstar
United States Department of Justice
Office of Immigration Litigation
P. O. Box 878
Ben Franklin Station
Washington, DC  20044

*Counsel for Respondent*

---

\*Judge McKee assumed senior status on October 20, 2022.  \*\*Judge Ambro assumed senior status on February 6, 2023.

OPINION OF THE COURT

**AMBRO**, Circuit Judge

Congress has provided certain avenues for immigration relief to those who have resided in the United States for many years and have built ties to the country. Cancellation of removal is one of them. To qualify for this discretionary relief, an applicant must, among other things, demonstrate his "good moral character." 8 U.S.C. § 1229b(b)(1)(B). But Congress has told us that one who has been "confined[] as a result of conviction" for 180 days or more cannot meet that requirement. *Id.* § 1101(f)(7).

Hugo Abraham Aguilar was detained for 1,332 days after being arrested in New Jersey. Following a guilty plea, he was convicted and sentenced to 1,332 days' imprisonment with credit for time served. So Aguilar spent no extra time in prison in connection with his state court conviction. The question before us is whether pre-conviction detention credited toward a defendant's sentence is confinement "as a result of conviction," thus precluding a finding of good moral character under the cancellation-of-removal statute. We conclude that it is and thus deny Aguilar's petition for review.

## I

Aguilar is a native and citizen of Honduras who entered the United States without inspection in 2001. He has lived here since then and has three children who are U.S. citizens. In

January 2014, Aguilar was arrested for allegedly sexually assaulting his stepdaughter and was charged with nine counts, including sexual assault, endangering the welfare of a child by a caretaker, and aggravated sexual contact under New Jersey law. Unable to afford $ 125,000 in bail, he remained in pretrial detention in the Morris County Jail in New Jersey. In May 2017—over three years later—Aguilar pled guilty to one reduced charge of third-degree endangering the welfare of a child through sexual conduct, N.J.S.A. 2C:24-4a(1), and was sentenced in September that year. As noted, he spent 1,332 days in custody. The Superior Court of New Jersey imposed that sentence precisely and gave Aguilar credit for the time he had served in pre-conviction detention. Administrative Record ("A.R.") 176.

Just days later, the Department of Homeland Security ("DHS") began removal proceedings, charging Aguilar with removability under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), for entering the country without being admitted or paroled after inspection.[1] He conceded removability but sought to remain in the United States by applying for cancellation of removal under 8 U.S.C. § 1229b(a) in March 2018. But qualifying for that type of relief turned out to be an uphill battle given his state court conviction.

The Immigration Judge ("IJ") found Aguilar statutorily ineligible for relief and ordered him removed to Honduras. In the IJ's view, Aguilar "st[ood] convicted for a crime for which

---

[1] For reasons we are unsure, the DHS prepared a notice to appear for Aguilar on April 11, 2014—only a few months after his arrest—but took no further action until completion of his criminal case, serving the notice on September 25, 2017.

4

he ha[d] been in detention" and was sentenced "to 1,332 days"; he thus "squarely" could not meet the INA's good moral character requirement, as he had been "confined[] as a result of conviction" for 180 days or more. J.A. 115. The IJ also denied Aguilar's request for a continuance to challenge his conviction in state court and to submit documents in support of his application. The Board of Immigration Appeals ("BIA") dismissed Aguilar's appeal. It agreed that his detention barred a finding of good moral character. It also concluded the IJ acted within his discretion in denying the request for a continuance.

Aguilar timely petitioned for review.[2] Although we generally lack jurisdiction to review "any judgment regarding the granting of relief" under the INA, *see* 8 U.S.C. § 1252(a)(2)(B)(i), determinations of statutory ineligibility are nondiscretionary legal questions exempt from that jurisdictional limitation, *see id.* § 1252(a)(2)(D); *Khan v. Att'y Gen.*, 979 F.3d 193, 197 (3d Cir. 2020).

---

[2] Because Aguilar maintained his counsel failed to advise him adequately of the immigration consequences of pleading guilty to the state charge, he petitioned for post-conviction relief in New Jersey state court in early 2018, asserting a Sixth Amendment violation for ineffective assistance of trial counsel. We stayed Aguilar's removal and held the case in abeyance pending the disposition of his petition. On March 21, 2023, the New Jersey Supreme Court denied a petition for certification; with that, his state post-conviction proceedings concluded. Aguilar's conviction stands, and his petition to us now is ripe for review, thus explaining the delay in our disposition of this case.

## II

We asked the parties to address whether (1) time spent in pretrial detention is "confine[ment] as a result of conviction" under the INA, and (2) the period for which Aguilar must establish his good moral character is coterminous with the "period of continuous presence" that also is necessary to qualify for relief. J.A. 107. The second issue, however, no longer is an open question in our Circuit. *See Mejia-Castanon v. Att'y Gen.*, 931 F.3d 224, 227 (3d Cir. 2019) (holding that the "stop-time rule," under which the physical presence period ends when the DHS serves a notice to appear, does not apply to the period during which an applicant must exhibit good moral character). Aguilar had to demonstrate his good moral character for ten years prior to his March 2018 application for cancellation of removal, even though the notice to appear was served in September 2017 (meaning he could no longer accrue physical presence time thereafter).

With that out the way, we turn to the first issue. We briefly address the Government's claim that Aguilar failed to exhaust any argument that pre-conviction detention cannot be "confine[ment] as a result of conviction." Because we do not see it that way, we then move to the merits of Aguilar's position.

### A

The Government believes we lack jurisdiction to consider Aguilar's good moral character claim because he did not raise (*i.e.*, exhaust) it before the BIA. It is true Aguilar did not argue to the BIA that his time-served sentence should not count as confinement under the statute, and we ordinarily cannot consider unexhausted arguments. *See* 8 U.S.C.

6

§ 1252(d)(1). Although the Government is wrong to suggest we thus lack jurisdiction—the INA's exhaustion requirement is a non-jurisdictional claim-processing rule, *see Santos-Zacaria v. Garland*, 598 U.S. 411, 421-23 (2023)—we "must enforce the rule" where, as here, the Government "properly raises it." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up). Yet we do not apply the exhaustion principle "in a draconian fashion." *Lin v. Att'y Gen.*, 543 F.3d 114, 121 (3d Cir. 2008), *abrogated on other grounds by Santos-Zacaria*, 598 U.S. 411. Rather, we look past a petitioner's failure to make an argument to the BIA where the agency "*sua sponte*[] considered th[e] issue and adopted and affirmed the IJ's decision on th[at] basis." *Id.* at 123.

That is what the BIA did here. It agreed with the IJ that Aguilar was statutorily ineligible for relief because he lacked good moral character and then "was sentenced to, and served, 1332 days in jail for this crime." A.R. 3. "Consequently, since September 2017, he served more than 180 days in jail. A person who has been convicted of one or more crimes and served more than 180 days in jail during the 10-year period has been statutorily determined to lack good moral character." *Id.* (citing 8 U.S.C. § 1101(f)(7)). Implicit in that determination is that Aguilar's 1,332-day detention was "as a result of" his conviction. We believe the BIA's *sua sponte* consideration of the issue makes it ripe for our review, as "the interests behind the exhaustion rule have been fulfilled." *Lin*, 543 F.3d at 124 (brackets omitted) (citing *Sidabutar v. Gonzales*, 503 F.3d 1116, 1120-21 (10th Cir. 2007)).

7

**B**

As previewed, an applicant seeking cancellation of removal under the INA must show he has been a person of "good moral character" during the relevant timeframe. 8 U.S.C. § 1229b(b)(1)(B). He cannot do so if he "has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more." *Id.* § 1101(f)(7).

No one disputes Aguilar was confined as recited. But was his detention "a result of conviction" because it was later credited toward his sentence? The IJ and BIA thought so. And although neither offered any reasoning nor cited relevant authority, the Board already has answered this question. *See Matter of Valdovinos*, 18 I. & N. Dec. 343, 344-45 (B.I.A. 1982). In that precedential decision, it held "the time [an applicant] spent incarcerated prior to his . . . conviction is considered time served as a result of his subsequent conviction" under § 1101(f)(7), which was consistent with state law (California in that case) "specif[ying] that a criminal defendant is given credit for pre-conviction confinement when determining the date of his release from custody." *Id.* at 344. Further reason to reject the argument that pre-conviction detention should not count in determining the time spent "confined[] as a result of conviction," the Board explained, was that "such pre-sentence confinement also results in the accruing of good behavior credit for early release from incarceration." *Id.* at 345. The Government urges us to defer to the Board's interpretation in *Valdovinos* and join the Ninth and Tenth Circuits, which have concluded that pretrial detention later credited as time served as part of the sentence imposed counts as confinement "as a result of" conviction. *See*

8

*Garcia-Mendoza v. Holder*, 753 F.3d 1165, 1170-71 (10th Cir. 2014); *Arreguin-Moreno v. Mukasey*, 511 F.3d 1229, 1232-33 (9th Cir. 2008).

Aguilar claims they got it wrong. To him, the text of § 1101(f)(7) "unambiguously" makes clear that the phrase "confined[] as a result of conviction" "requires a temporal sequence of events—a conviction, then confinement"—not met in his case. Pet'r Br. 18. His confinement, he says, "was 'as a result' of his inability to post bail, not the later in time entry of his plea agreement." *Id.* We disagree.[3]

In our view, § 1101(f)(7) is best understood to include the period of a defendant's pre-conviction confinement if it is later credited toward his sentence. As both the Ninth and Tenth Circuits reasoned, crediting the time spent in detention against the term of imprisonment imposed after conviction now is a "uniform practice." *Arreguin-Moreno*, 511 F.3d at

---

[3] When the parties briefed this case in 2019, they disagreed whether the BIA's interpretation of § 1101(f)(7) is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984). That decision required courts to defer to the BIA's reasonable interpretation if the statutory text was not sufficiently clear. *See id.* at 842-44. As the Supreme Court has now abandoned the *Chevron* doctrine, *see Loper Bright Enters. v. Raimondo*, No. 22-451 (June 28, 2024); *Relentless, Inc. v. U.S. Dep't of Com.*, No. 22-1219 (June 28, 2024), we need not entertain the parties' debate. Reviewing the issue de novo, as we must, we still reach the same conclusion as the BIA did.

1232 (citing *Spina v. Dep't of Homeland Sec.*, 470 F.3d 116, 127 (2d Cir. 2006)); *Garcia-Mendoza*, 753 F.3d at 1170. "The federal government, fifty states, and the District of Columbia provide by statute, rule, or court decision that time spent by a defendant in pre-conviction detention is to be treated as a day-for-day credit or reduction of the term of imprisonment imposed upon conviction." *Spina*, 470 F.3d at 127. New Jersey law (under which Aguilar was convicted) is consistent. *See* N.J. Ct. R. 3:21-8 ("The defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail . . . between arrest and the imposition of sentence."); *State v. Bellamy*, 224 A.3d 628, 631 (N.J. App. Div. 2019) ("Jail credits . . . reduce a defendant's overall sentence and any term of parole ineligibility.").

The reason defendants "will ordinarily earn time-served credit for any period of presentencing detention" is that "postconviction incarceration is considered punishment for the offense." *Betterman v. Montana*, 578 U.S. 437, 447 n.9 (2016) (citing 18 U.S.C. § 3585(b)). So when a defendant spends time in custody in connection with the crime for which he is later convicted, and that pre-conviction confinement is credited toward his ultimate sentence, his detention effectively becomes part of the term of imprisonment imposed by the judgment. *See Arreguin-Moreno*, 511 F.3d at 1232; *Garcia-Mendoza*, 753 F.3d at 1170. For practical purposes, his confinement thus is "a result of conviction" under § 1101(f)(7). So we agree with our dissenting colleague that the statute's "focus is those confirmed to have engaged in illicit behaviors and who have had [a] sentence imposed for that conduct." Dissent Op. 7.

Aguilar's contrary theory would allow a defendant to benefit from a shorter sentence of post-conviction

10

incarceration—or no post-conviction incarceration at all, as was true here—while circumventing the immigration consequences that Congress intended. A simple hypothetical illustrates that point. Suppose a person spent 120 days in pretrial confinement. He is convicted and sentenced to 190 days' imprisonment with credit for time served, so he serves 70 days in prison after his conviction. If pretrial detention credited toward a sentence is not "confine[ment] as a result of conviction," that individual falls outside § 1101(f)(7)'s scope, as he was confined for only 70 days after his conviction, even though the sentence imposed, and the time served, was 190 days—more than the statute's 180-day limit. But a person convicted of the same crime who spent no time (or less than 10 days) in pretrial confinement and received a 190-day sentence would be confined "as a result of" conviction and barred from establishing his good moral character. That can't be what Congress had in mind.

Our dissenting colleague contends that Congress could have replaced "as a result of" with "in connection with" had it intended § 1101(f)(7) to be interpreted as we do today. Dissent Op. 3-4. Perhaps that's true. But it likewise could have rephrased the statute to signal that "a temporal sequence is required," as the dissent believes is required, *id.* at 3, by "us[ing] narrower language, such as '*after* a conviction' or '*following* a conviction,'" *id.* (quoting *Mont v. United States*, 139 S. Ct. 1826, 1829 (2019)).

No doubt an individual's confinement would be "a result of his inability to post bail" rather than "a result of conviction" if his pretrial detention were not credited as time served in the judgment of conviction. *See Troncoso-Oviedo v. Garland*, 43 F.4th 936, 941 (9th Cir. 2022). In that context,

11

casting pretrial detention as confinement under § 1101(f)(7) indeed would "unduly discriminate[] against those too poor to muster sufficient funds for bail." Pet'r Br. 19. But that is not this case. Likewise, if a defendant's conviction were vacated, any period of pretrial confinement in connection with it logically would not preclude a finding of good moral character. *See Garcia-Mendoza*, 753 F.3d at 1169 n.1. And, if a defendant's pretrial detention exceeds the sentence ultimately imposed, only the latter would count as confinement under the statute. For instance, a defendant who spent 200 days in pretrial detention and is sentenced to 170 days' imprisonment with credit for time served could still establish his good moral character. This fact-based inquiry, which looks to the actual sentence for the conviction, alleviates any fear that defendants may be penalized for their inability to make bail.

But we are not now concerned with any of the above. Aguilar spent 1,332 days in pre-conviction confinement, which was credited as time served in making up the full sentence imposed for his conviction. That conviction withstood state-court challenges, so the immigration consequences of § 1101(f)(7) attach. Aguilar thus cannot establish his good moral character under § 1229b(b)(1)(B).

## III

We also deny as moot Aguilar's challenge to the BIA's decision dismissing his appeal from the IJ's denial of a continuance in the underlying removal proceedings. Aguilar requested a continuance to pursue post-conviction relief from the New Jersey conviction that made him ineligible for cancellation of removal. But his claim that the IJ wrongly denied his motion became moot once the New Jersey state

12

courts denied him that relief, as federal courts have no "power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (citation omitted). Even if we concluded the IJ should have granted a continuance, "[a] remand now would effect[] no change" because the "basis for a continuance no longer exists." *Qureshi v. Gonzales*, 442 F.3d 985, 987-90 (7th Cir. 2006) (claim for continuance mooted by dismissal of I-130 petition).

\* \* \* \* \*

Congress has imposed a "good moral character" requirement on any noncitizen seeking to cancel his removal from the United States, and one who has been "confined[] as a result of conviction" for 180 days or more cannot make that showing. *See* 8 U.S.C. §§ 1229b(b)(1)(B), 1101(f)(7). Aguilar was convicted and sentenced to 1,332 days' imprisonment with credit for time served. In line with the BIA's decision in *Valdovinos* and the persuasive rulings of the Ninth and Tenth Circuits, we hold that pretrial detention later credited as time served as part of the sentence imposed counts as confinement under § 1101(f)(7). We thus reject Aguilar's challenge to the BIA's decision and deny his petition for review.

13

McKEE, *Circuit Judge*, dissenting.

While I agree with the Majority's jurisdictional holding, I cannot agree with my colleagues' view that Aguilar's pre-conviction detention can constitute "confine[ment], *as a result of* conviction." I understand my colleagues' contrary conclusion. However, Aguilar's pretrial detention was clearly the result of his financial inability to obtain pretrial release on bail. As a matter of basic logic, his pretrial detention clearly could not have resulted from something—i.e., a conviction—which had not yet occurred. Accordingly, I cannot join my colleagues' opinion.

**I.**

My colleagues' conclusion that a period of imprisonment resulting from one's inability to afford bail constitutes confinement as a result of conviction for the underlying criminal offense does have superficial appeal. As my colleagues explain, other Courts of Appeals agree. Nevertheless, that conclusion is inconsistent with the plain text of 8 U.S.C. § 1101(f)(7) which does indeed impose the temporal requirement that my colleagues dismiss. I believe that 8 U.S.C. § 1101(f)(7) means no more than it says. Accordingly,

1

pretrial detention cannot constitute "confine[ment]*, as a result of* conviction."

Statutory interpretation starts with the "literal meaning of the statute" which we determine by "read[ing] the statute in its ordinary and natural sense."[1] If this reading reveals an "unambiguous [meaning], our inquiry ends because courts must presume that Congress 'says in a statute what it means and means in a statute what it says there.'"[2]

Here, we must interpret the phrase "confine[ment], as a result of conviction," as used in 8 U.S.C. § 1101(f)(7). Pretrial detention clearly constitutes "confinement." However, Congress has no less clearly limited the circumstances in which such confinement should bar cancellation of removal. As my colleagues correctly explain, pretrial confinement only bars that relief when the confinement results from a conviction.[3]

---

[1] *Harvard Secured Creditors Liquidation Trust v. I.R.S.*, 568 F.3d 444, 451 (3d Cir. 2009) (quoting *Galloway v. United States*, 492 F.3d 219, 223 (3d Cir.2007)).

[2] *Da Silva v. Att'y Gen. United States*, 948 F.3d 629, 635 (3d Cir. 2020) (quoting *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010)).

[3] *See* Majority Op. at 7.

Merriam-Webster defines "result" as "a consequence, issue, or conclusion";[4] the Oxford English Dictionary defines it as "the effect, consequence, or outcome of some action, process, or design";[5] and Black's Law Dictionary defines it as "a consequence, effect, or conclusion."[6] Thus, each of these commonly accepted authorities agree that "[a]n event . . . cannot be a 'consequence' of another event . . . that has not yet occurred[,] nor can an 'effect' precede its purported cause."[7] Section 1101(f)(7) therefore requires that the prescribed confinement be a consequence or effect (i.e., result) of the conviction, and not merely be related to it. Clearly a temporal sequence is required. Since pretrial detention occurs *before* a conviction, it cannot amount to "confine[ment], as a result of conviction." The confinement cannot result from something that has not yet occurred. I do not believe we should now rewrite this statute to resolve the problems posed by my

---

[4] Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/result (last visited April 19, 2024).
[5] Oxford English Online Dictionary, https://www.oed.com/view/Entry/164061?rskey=njZ8qt&result=1&isAdvanced=false (last visited April 19, 2024).
[6] Black's Law Dictionary (11th ed. 2019).
[7] *Daniel S. v. Scranton Sch. Dist.*, 230 F.3d 90, 98 (3d Cir. 2000) (Becker, C.J., concurring) (citing Webster's Third New International Dictionary 1937 (1966)).

colleagues' hypotheticals. Nor does the quandary that results from the plain reading of the text suggest that Congress did not mean what it said when it drafted 8 U.S.C. § 1101(f)(7).

If Congress had intended the result that the Majority reaches, it could have used broader language than "as a result of." Congress could have replaced "as a result of" with something like "in connection with" as it did in 18 U.S.C. § 3624. In *Mont v. United States*, the Supreme Court held that pretrial detention later credited as time served for a new offense is "imprison[ment] in connection with a conviction" as used in § 3624(e).[8] The Court explained that the phrase "in connection with" encompassed pretrial detention based on its broad meaning and the context of the statutory scheme within which it was used.[9] The Court also emphasized that "[i]f Congress intended a narrower interpretation, it could have easily used narrower language, such as '*after* a conviction' or '*following* a conviction.'"[10]

My colleagues rephrase the language of 8 U.S.C. § 1101(f)(7) while explaining why they believe "as a result of"

---

[8] *Mont v. United States*, 139 S. Ct. 1826, 1829 (2019).
[9] *Id*. at 1832–33.
[10] *Id*. at 1832–33 (citation omitted).

does not have a temporal requirement. Nevertheless, in three different places in the Majority opinion, my colleagues, like the Supreme Court in *Mont*, use the phrase "in connection with" to explain the relationship between pretrial detention and the subsequent credit for that detention upon conviction.[11] Congress could have done the same had it intended the result my colleagues reach. Congress could have declared that anyone "confined for 180 days *in connection with* a conviction" lacked good moral character and was therefore ineligible for relief from cancellation of removal.

In reaching the opposite conclusion, the Majority adopts the interpretations of the Courts of Appeals for the Ninth and Tenth Circuits[12] and the Board of Immigration Appeals (BIA).[13] But in *Arreguin-Moreno*, the Court of Appeals for the

---

[11] *See* Majority Op. at 3, 9, 12.

[12] *See Arreguin-Moreno v. Mukasey*, 511 F.3d 1229, 1232 (9th Cir. 2008) ("[P]re-trial detention that is later credited as time served as part of the sentence imposed counts as confinement as a result of a conviction within the meaning of § 1101(f)(7)."); *Garcia-Mendoza v. Holder*, 753 F.3d 1165, 1170 (10th Cir. 2014) ("We conclude that the phrase 'as a result of conviction' is ambiguous, and we defer to the BIA's reasonable interpretation of the statute" concluding that pretrial detention is encompassed within the statute.).

[13] *Matter of Valdovinos*, 18 I. & N. Dec. 343, 344 (BIA 1982) ("[T]he time the respondent spent incarcerated prior to his July 1, 1980, conviction is considered time served as a result of his subsequent conviction under California law.").

Ninth Circuit also failed to consider the plain meaning of the statute and thus reached an erroneous conclusion.[14] In *Garcia-Mendoza*, the Court of Appeals for the Tenth Circuit reasoned that "as a result of conviction" is ambiguous and has multiple interpretations.[15] But as explained, "as a result" is not ambiguous merely because it allows for the kind of incongruous consequences that trouble my colleagues. In *Matter of Valdovinos*, the BIA obfuscated the plain meaning of "as a result of conviction" and relied solely on general principles concerning credit for time served.[16] But the practical and possibly legal difficulties of not crediting pretrial confinement to a subsequent conviction does not justify rewriting 8 U.S.C. § 1101(f)(7).

I realize that my interpretation of 8 U.S.C. § 1101(f)(7) can also yield inequitable or incongruous results as hypothesized by my colleagues.[17] However, for all the reasons that I have argued, I do not believe those results justify rewriting the statute. Incongruous results flow from the Majority's interpretation as well as from my own. That may be

---

[14] *Arreguin-Moreno*, 511 F.3d at 1232.
[15] 753 F.3d at 1170.
[16] 18 I. & N. Dec. at 344–45.
[17] *See* Majority Op. at 9-10.

a reason for Congress to rewrite the statute, but it does not license us to rewrite it.

I doubt that anyone would suggest that Aguilar's sentence of 1,332 days upon conviction, the exact length of his confinement for failure to post bond, was a mere coincidence. Rather, the sentence was imposed because it coincided with the length of his incarceration for failure to post bail.

Aguilar spent 1,332 days (over 3.5 years) in pretrial detention, maintaining his innocence throughout until accepting a guilty plea on counsel's advice.[18] While the offense he pled to typically carries a sentence of 3-5 years, Aguilar could have received a downgraded fourth-degree offense with a *maximum* sentence of 18 months because he was a first-time offender,[19] leaving open the possibility that he could have been sentenced to less than the 180 days of confinement that bars cancellation of removal. Instead, he received a 1,332-day sentence, with credit for time served, as the court in his criminal case had no incentive to impose a lower sentence than that which he had already served.

---

[18] A.R. 176–77.
[19] Pet'r Reply Br. 6 n.1.

Individuals detained pretrial are more likely to receive sentences equivalent to the time already served in detention, resulting in longer sentences than would have otherwise been imposed.[20] Thus, a petitioner's financial status could unfairly impact whether s/he is of "good moral character." The effect of the Majority's interpretation of 8 U.S.C. § 1101(f)(7) will be to arbitrarily punish some individuals who were detained pretrial due to an inability to afford bail when they later receive credit for time served. Since we will never know what their sentence would have been had they not been detained pretrial, it will be impossible to determine if such a sentence indicates lack of "good moral character" as defined by 8 U.S.C. § 1101(f)(7).

Lastly, the Majority's interpretation of 8 U.S.C. § 1101(f)(7) fails to convincingly demonstrate that individuals, whose time in pretrial detention is due to an inability to post bail, lack "good moral character." Good moral character

---

[20] *See* Léon Digard and Elizabeth Swavola, *Justice Denied: The Harmful and Lasting Effects of Pretrial Detention*, VERA INSTITUTE OF JUSTICE, Apr. 2019, at 1, 5, https://www.vera.org/downloads/publications/Justice-Denied-Evidence-Brief.pdf (discussing how individuals in pretrial detention are more likely to receive harsher sentences than those who do not spend time detained before trial).

8

"means character which measures up to the standards of average citizens of the community in which the applicant resides."[21] Section 1101(f) lists circumstances under which someone would not be "regarded as, or found to be a person of good moral character."[22] Notably, this provision explicitly includes illicit actions and convictions but does not mention pretrial detention.[23] This omission suggests that individuals currently facing charges without a conviction are not specific targets of this provision, regardless of whether they await trial in or out of jail. Therefore, the focus remains strictly on those confirmed to have engaged in illicit behaviors and who have had legal judgments imposed, rather than on those awaiting trial like Aguilar. Pretrial detention arising from financial inability to post bail does not reflect the offensive nature of the underlying conduct nor limit denial of relief to those who truly lack "good moral character."

---

[21] VOLUME 12, CITIZENSHIP AND NATURALIZATION, CHAPTER 1, PURPOSE AND BACKGROUND U.S. CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/policy-manual/volume-12-part-f-chapter-1#footnotelink-1 (last visited Apr 19, 2024) (citing 8 CFR 316.10(a)(2)).
[22] *See also* 8 CFR § 316.10(b)(1)–(2) (enumerating circumstances that will form the basis of a finding for lack of good moral character as also described in 8 U.S.C. § 1101(f)).
[23] 8 U.S.C. § 1101(f)(1)–(9).

**II.**

The Majority's application of 8 U.S.C. § 1101(f)(7), which disqualifies individuals "confined to a penal institution for an aggregate period of one hundred and eighty days or more,"[24] overlooks the distinction between pretrial detention and conviction. Aguilar's detention pretrial, due to an inability to post bail, is clearly in connection with his subsequent conviction, but pretrial detention does not follow from a conviction. Accordingly, I respectfully dissent from the decision of my colleagues.

---

[24] *Id.* § 1101(f)(7).