6/3/2019 4:58:18 PM

# Compare Results

| Old File: | | New File: |
|---|---|---|
| **17-8995.pdf** | versus | **17-8995_new.pdf** |
| **30 pages (176 KB)** | | **30 pages (179 KB)** |
| 5/31/2019 12:36:14 PM | | 6/3/2019 4:56:47 PM |

**Total Changes**

**1**

**Content**

1 Replacement

0 Insertions

0 Deletions

**Styling and Annotations**

0 Styling

0 Annotations

Go to First Change (page 4)

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MONT *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 17–8995.   Argued February 26, 2019—Decided June 3, 2019

Petitioner Mont was released from federal prison in 2012 and began a
5-year term of supervised release that was scheduled to end on
March 6, 2017.  On June 1, 2016, he was arrested on state drug traf-
ficking charges and has been in state custody since that time.  In Oc-
tober 2016, Mont pleaded guilty to state charges.  He then admitted
in a filing in Federal District Court that he violated his supervised-
release conditions by virtue of the new state convictions, and he re-
quested a hearing.  The District Court scheduled a hearing for No-
vember, but later rescheduled it several times to allow the state court
to first sentence Mont.  On March 21, 2017, Mont was sentenced to
six years' imprisonment, and his roughly 10 months of pretrial custo-
dy were credited as time served.  On March 30, the District Court is-
sued a warrant for Mont and set a supervised-release hearing.  Mont
then challenged the District Court's jurisdiction on the ground that
his supervised release had been set to expire on March 6.  The Dis-
trict Court ruled that it had jurisdiction under 18 U. S. C. §3583(i)
based on a summons it had issued in November 2016.  It then re-
voked Mont's supervised release and ordered him to serve an addi-
tional 42 months' imprisonment to run consecutive to his state sen-
tence.  The Sixth Circuit affirmed on alternative grounds, holding
that Mont's supervised-release period was tolled under §3624(e),
which provides that a "term of supervised release does not run during
any period in which the person is imprisoned in connection with a
conviction for a . . . crime unless the imprisonment is for a period of
less than 30 consecutive days."  Because the roughly 10 months of
pretrial custody was "in connection with [Mont's] conviction" and
therefore tolled the period of supervised release, the court concluded
that there was ample time left on Mont's term of supervised release

when the March warrant issued.

*Held*: Pretrial detention later credited as time served for a new conviction is "imprison[ment] in connection with a conviction" and thus tolls the supervised-release term under §3624(e), even if the court must make the tolling calculation after learning whether the time will be credited. Pp. 6–13.

(a) The text of §3624(e) compels this reading. First, dictionary definitions of the term "imprison," both now and at the time Congress created supervised release, may very well encompass pretrial detention, and Mont has not pressed any serious argument to the contrary. Second, the phrase "in connection with a conviction" encompasses a period of pretrial detention for which a defendant receives credit against the sentence ultimately imposed. "In connection with" can bear a "broad interpretation," *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U. S. 71, 85, but the outer bounds need not be determined here, as pretrial incarceration is directly tied to the conviction when it is credited toward the new sentence. This reading is buttressed by the fact that Congress, like most States, instructs courts calculating a term of imprisonment to credit pretrial detention as time served on a subsequent conviction. See §3585(b)(1). Third, the text undeniably requires courts to retrospectively calculate whether a period of pretrial detention should toll a period of supervised release by including the 30-day minimum. The statute does not require courts to make a tolling determination as soon as a defendant is arrested on new charges or to continually reassess the tolling calculation throughout the pretrial-detention period. Its 30-day minimum-incarceration threshold contemplates the opposite. Pp. 6–8.

(b) The statutory context also supports this reading. First, §3624(e) provides that supervised release "runs concurrently" with "probation or supervised release or parole for another offense," but excludes periods of "imprison[ment]" served "in connection with a conviction." This juxtaposition reinforces the fact that prison time is "not interchangeable" with supervised release, *United States* v. *Johnson*, 529 U. S. 53, 59, and furthers the statutory design of "successful[ly] transition[ing]" a defendant from "prison to liberty," *Johnson* v. *United States*, 529 U. S. 694, 708–709. Second, it would be an exceedingly odd construction of the statute to give a defendant the windfall of satisfying a new sentence of imprisonment and an old sentence of supervised release with the same period of pretrial detention. Supervised release is a form of punishment prescribed along with a term of imprisonment as part of the same sentence. And Congress denies defendants credit for time served if the detention time has already "been credited against another sentence." §3585(b). Pp. 8–10.

(c) Mont's argument that the statute's present tense forbids any

Syllabus

backward looking tolling analysis confuses the rule with a court's analysis of whether that rule was satisfied. The present-tense phrasing does not address whether a judge must be able to make a supervised-release determination at any given time. Moreover, any uncertainty about whether supervised release is tolled matters little from either the court's or the defendant's perspective. As for the court, the defendant need not be supervised when he is held in custody; as for the defendant, there is nothing unfair about not knowing during pretrial detention whether he is also under supervised release. Pp. 10–12.

723 Fed. Appx. 325, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, ALITO, and KAVANAUGH, JJ., joined. SOTOMAYOR, J., filed a dissenting opinion, in which BREYER, KAGAN, and GORSUCH, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 17–8995

## JASON J. MONT, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 3, 2019]

JUSTICE THOMAS delivered the opinion of the Court.

This case requires the Court to decide whether a convicted criminal's period of supervised release is tolled—in effect, paused—during his pretrial detention for a new criminal offense. Specifically, the question is whether that pretrial detention qualifies as "imprison[ment] in connection with a conviction for a Federal, State, or local crime." 18 U. S. C. §3624(e). Given the text and statutory context of §3624(e), we conclude that if the court's later imposed sentence credits the period of pretrial detention as time served for the new offense, then the pretrial detention also tolls the supervised-release period.

I

A

In 2004, petitioner Jason Mont began distributing cocaine and crack cocaine in northern Ohio. After substantial drug sales to a confidential informant and a search of his home that uncovered handguns and $2,700 in cash, a federal grand jury indicted Mont for multiple drug and firearm offenses. He later pleaded guilty to conspiring to possess with intent to distribute cocaine, and to possessing a firearm and ammunition after having been convicted of a

felony.   See 18 U. S. C. §922(g)(1) (2000 ed.); 21 U. S. C.
§§841(a)(1), 846 (2000 ed.).

The District Court sentenced Mont to 120 months' im-
prisonment, later reduced to 84 months, to be followed by
5 years of supervised release.   Mont was released from
federal prison on March 6, 2012, and his supervised re-
lease was "slated to end on March 6, 2017."   723 Fed.
Appx. 325, 326 (CA6 2018); see 18 U. S. C. §3624(e) (a
"term of supervised release commences on the day the
person is released from imprisonment").   Among other
standard conditions, Mont's supervised release required
that he "not commit another federal, state, or local crime,"
"not illegally possess a controlled substance," and "refrain
from any unlawful use of a controlled substance."   Judg-
ment in No. 4:05–cr–00229 (ND Ohio), Doc. 37, p. 111.

Mont did not succeed on supervised release.   In March
2015, an Ohio grand jury charged him with two counts of
marijuana trafficking in a sealed indictment.   Mont was
arrested and released on bond while awaiting trial for
those charges.   Things only got worse from there.   In
October 2015, Mont tested positive for cocaine and oxyco-
done during a routine drug test conducted as part of his
supervised release.   But Mont's probation officer did not
immediately report these violations to the District Court;
instead, the officer referred him for additional substance-
abuse counseling.   Mont proceeded to test positive in five
more random drug tests over the next few months.   He
also used an "'unknown' liquid to try to pass two subse-
quent drug tests."   723 Fed. Appx., at 326.   In Jan-
uary 2016, Mont's probation officer finally reported the
supervised-release violations, including Mont's use of drugs
and attempts to adulterate his urine samples.   The violation
report also informed the District Court about the pending
state charges and the anticipated trial date of March 2016
in state court.   The District Court declined to issue an
arrest warrant at that time, but it asked to "'be notified of

the resolution of the state charges.'"  *Ibid.*; see 18 U. S. C.
§3606 (explaining that the District Court "may issue a
warrant for the arrest" of the releasee for "violation of a
condition of release").

On June 1, 2016, approximately four years and three
months into his 5-year term of supervised release, Mont
was arrested again on new state charges of trafficking in
cocaine, and his bond was revoked on the earlier marijuana-
trafficking charges.  He was incarcerated in the Ma-
honing County Jail and has remained in state custody
since that date.  Mont's probation officer filed a report
with the District Court stating that he had violated the
terms of his release based on these new state offenses.
The officer later advised the court that because Mont's
incarceration rendered him unavailable for supervision,
the Probation Office was "toll[ing]" his federal supervision.
App. 21.  The officer promised to keep the court apprised
of the pending state charges and stated that, if Mont were
convicted, the officer would ask the court to take action at
that time.

In October 2016, Mont entered into plea agreements
with state prosecutors in exchange for a predetermined
6-year sentence.  The state trial court accepted Mont's guilty
pleas on October 6, 2016, and set the cases for sentencing
in December 2016.

Three weeks later, Mont filed a written admission in the
District Court "acknowledg[ing]" that he had violated his
conditions of supervised release "by virtue of his conviction
following guilty pleas to certain felony offenses" in state
court.  Record in No. 4:05–cr–00229 (ND Ohio), Doc. 92,
p. 419.  Even though he had yet to be sentenced for the state
offenses, Mont sought a hearing on the supervised-release
violations at the court's "earliest convenience."  *Ibid.*  The
court initially scheduled a hearing for November 9, 2016,
but then, over Mont's objection, rescheduled the hearing
several times to allow for "the conclusion of the State

sentencing." App. 8; 723 Fed. Appx., at 327.

On March 21, 2017, Mont was sentenced in state court to six years' imprisonment. The judge "credited the roughly ten months that Mont had already been incarcerated pending a disposition as time served." *Id.,* at 327. The District Court issued a warrant on March 30, 2017, and ultimately set a supervised-release hearing for June 28, 2017.

B

Two days before that hearing, Mont challenged the jurisdiction of the District Court based on the fact that his supervised release had initially been set to expire on March 6, 2017. The court concluded that it had authority to supervise Mont, revoked his supervised release, and ordered him to serve an additional 42 months' imprisonment to run consecutive to his state sentence. The court held that it retained jurisdiction to revoke the release under 18 U. S. C. §3583(i), which preserves, for a "reasonably necessary" period of time, the court's power to adjudicate violations and revoke a term of supervised release after the term has expired "if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." The court further held that it retained authority to revoke Mont's term of supervised release because it gave "notice by way of a summons" on November 1, 2016, when it originally scheduled the hearing. App. 22. The court also concluded that the delay between the guilty pleas in October 2016 and the hearing date in June 2017 was "reasonably necessary." *Id.*, at 24.

The Sixth Circuit affirmed on alternative grounds. The court could find no evidence in the record that a summons had issued within the meaning of §3583(i). 723 Fed. Appx., at 329, n. 5. But because Circuit precedent provided an alternative basis for affirmance, the court did not further consider the Government's argument that the

District Court retained jurisdiction under §3583(i). Instead, the court held that Mont's supervised-release period was tolled while he was held in pretrial detention in state custody under §3624(e), which provides:

> "(e) Supervision After Release.— . . . The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person *is imprisoned in connection with a conviction* for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." (Emphasis added.)

Relying on Circuit precedent, the Sixth Circuit explained that when a defendant is convicted of the offense for which he was held in pretrial detention for longer than 30 days and "'his pretrial detention is credited as time served toward his sentence, then the pretrial detention is "in connection with" a conviction and tolls the period of supervised release under §3624.'" *Id.*, at 328 (quoting *United States* v. *Goins*, 516 F. 3d 416, 417 (2008)). Because Mont's term of supervised release had been tolled between June 2016 and March 2017, there was ample time left on his supervised-release term when the warrant issued on March 30, 2017.

The Courts of Appeals disagree on whether §3624(e) tolls supervised release for periods of pretrial detention lasting longer than 30 days when that incarceration is later credited as time served on a conviction. Compare *United States* v. *Ide*, 624 F. 3d 666, 667 (CA4 2010) (supervised-release period tolls); *United States* v. *Molina-Gazca*, 571 F. 3d 470, 474 (CA5 2009) (same); *United*

*States* v. *Johnson*, 581 F. 3d 1310, 1312–1313 (CA11 2009) (same); *Goins*, *supra*, at 417 (same), with *United States* v. *Marsh*, 829 F. 3d 705, 709 (CADC 2016) (supervised-release period does not toll); *United States* v. *Morales-Alejo*, 193 F. 3d 1102, 1106 (CA9 1999) (same). We granted certiorari to resolve this split of authority. 586 U. S. ___ (2018).

## II

We hold that pretrial detention later credited as time served for a new conviction is "imprison[ment] in connection with a conviction" and thus tolls the supervised-release term under §3624(e). This is so even if the court must make the tolling calculation after learning whether the time will be credited. In our view, this reading is compelled by the text and statutory context of §3624(e).

## A

Section 3624(e) provides for tolling when a person "is imprisoned in connection with a conviction." This phrase, sensibly read, includes pretrial detention credited toward another sentence for a new conviction.

First, the definition of "is imprisoned" may well include pretrial detention. Both now and at the time Congress created supervised release, see §212(a)(2), 98 Stat. 1999–2000, the term "imprison" has meant "[t]o put in a prison," "to incarcerate," "[t]o confine a person, or restrain his liberty, in any way." Black's Law Dictionary 681 (5th ed. 1979); 5 Oxford English Dictionary 113 (1933); accord, Black's Law Dictionary 875 (10th ed. 2014). These definitions encompass pretrial detention, and, despite the dissent's reliance on a narrower definition, *post,* at 5–7 (opinion of SOTOMAYOR, J.), even Mont has not pressed any serious argument to the contrary. As the Sixth Circuit previously recognized, if imprisonment referred only to "confinement that is the result of a penalty or sentence,

then the phrase 'in connection with a conviction' [would] becom[e] entirely superfluous." *Goins*, *supra*, at 421.

Second, the phrase "in connection with a conviction" encompasses a period of pretrial detention for which a defendant receives credit against the sentence ultimately imposed. The Court has often recognized that "in connection with" can bear a "broad interpretation." *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit,* 547 U. S. 71, 85 (2006) (interpreting "in connection with the purchase or sale" broadly in the context of §10(b) of the Securities Exchange Act of 1934, 15 U. S. C. §78j(b)); see, *e.g., United States* v. *American Union Transport, Inc.*, 327 U. S. 437, 443 (1946) (describing the phrase "in connection with" in the Shipping Act, 1916, 39 Stat. 728, as "broad and general"). The Court has also recognized that "'in connection with' is essentially indeterminate because connections, like relations, stop nowhere." *Maracich* v. *Spears*, 570 U. S. 48, 59 (2013) (quotation altered). Here, however, we need not consider the outer bounds of the term "in connection with," as pretrial incarceration is *directly* tied to the conviction when it is credited toward the new sentence. The judgment of the state court stated as much, crediting the pretrial detention that Mont served while awaiting trial and sentencing for his crimes against his ultimate sentence for those same crimes.

This reading of "imprison[ment] in connection with a conviction" is buttressed by the fact that Congress, like most States, instructs courts calculating a term of imprisonment to credit pretrial detention as time served on a subsequent conviction. See 18 U. S. C. §3585(b)(1); Tr. of Oral Arg. 54 (statement of the Assistant Solicitor General representing that the same rule applies in 45 States and the District of Columbia). Thus, it makes sense that the phrase "imprison[ment] in connection with a conviction" would include pretrial detention later credited as time served, especially since both provisions were passed as

part of the Sentencing Reform Act of 1984. See §212(a)(2), 98 Stat. 2008–2009. If Congress intended a narrower interpretation, it could have easily used narrower language, such as "*after* a conviction" or "*following* a conviction." See *e.g.,* Bail Reform Act of 1984, §209(d)(4), 98 Stat. 1987 (adding Federal Rule of Criminal Procedure 46(h), allowing courts to direct forfeiture of property "*after* conviction of the offense charged" (emphasis added)). We cannot override Congress' choice to employ the more capacious phrase "in connection with."

Third, the text undeniably requires courts to retrospectively calculate whether a period of pretrial detention should toll a period of supervised release. Whereas §3624(e) instructs courts precisely when the supervised-release clock begins—"on the day the person is released"—the statute does not require courts to make a tolling determination as soon as a defendant is arrested on new charges or to continually reassess the tolling calculation throughout the period of his pretrial detention. Congress contemplated the opposite by including a minimum-incarceration threshold: tolling occurs "unless the imprisonment is for a period of less than 30 consecutive days." §3624(e). This calculation must be made after either release from custody or entry of judgment; there is no way for a court to know on day 5 of a defendant's pretrial detention whether the period of custody will extend beyond 30 days. Thus, at least some uncertainty as to whether supervised release is tolled is built into §3624(e) by legislative design. This fact confirms that courts should make the tolling calculation upon the defendant's release from custody or upon entry of judgment.

B

The statutory context also supports our reading. Supervised release is "a form of postconfinement monitoring" that permits a defendant a kind of conditional liberty by

allowing him to serve part of his sentence outside of prison. *Johnson* v. *United States*, 529 U. S. 694, 697 (2000). Recognizing that Congress provided for supervised release to facilitate a "transition to community life," we have declined to offset a term of supervised release by the amount of excess time a defendant spent in prison after two of his convictions were declared invalid. *United States* v. *Johnson*, 529 U. S. 53, 59–60 (2000). As we explained: "The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release" because "[s]upervised release has no statutory function until confinement ends." *Id.,* at 59. This understanding of supervised release informs our reading of the tolling provision.

Consider §3624(e) itself. The sentence preceding the one at issue here specifies that supervised release "runs concurrently" with "probation or supervised release or parole for *another* offense." §3624(e) (emphasis added). But the next sentence (the one at issue here) excludes periods of "imprison[ment]" served "in connection with a conviction." The juxtaposition of these two sentences reinforces the fact that prison time is "not interchangeable" with supervised release. *Id.,* at 59. Permitting a period of probation or parole to count toward supervised release but excluding a period of incarceration furthers the statutory design of "successful[ly] transition[ing]" a defendant from "prison to liberty." *Johnson*, *supra,* at 708–709. Allowing pretrial detention credited toward another sentence to toll the period of supervised release is consistent with that design. Cf. A. Scalia & B. Garner, Reading Law 167 (2012) (explaining that "the whole-text canon" requires consideration of "the entire text, in view of its structure" and "logical relation of its many parts").

Second, it would be an exceedingly odd construction of the statute to give a defendant the windfall of satisfying a new sentence of imprisonment and an old sentence of

supervised release with the same period of pretrial deten-
tion.  Supervised release is a form of punishment that
Congress prescribes along with a term of imprisonment as
part of the same sentence.  See generally §3583.  And
Congress denies defendants credit for time served if the
detention time has already "been credited against another
sentence."  §3585(b).  Yet Mont's reading of §3624(e) would
deprive the Government of its lawfully imposed sentence
of supervised release while the defendant is serving a
separate sentence of incarceration—one often imposed by
a different sovereign.  Under our view, in contrast, time in
pretrial detention constitutes supervised release only if
the charges against the defendant are dismissed or the
defendant is acquitted.  This ensures that the defendant is
not faulted for conduct he might not have committed,
while otherwise giving full effect to the lawful judgment
previously imposed on the defendant.[1]

C

In response to these points, Mont follows the D. C.
Circuit in arguing that the present tense of the statute
("'*is* imprisoned'") forbids any backward looking tolling
analysis.  See *Marsh*, 829 F. 3d, at 709.  Mont contends
that, when a defendant is held in pretrial detention, a
court cannot say *at that moment* that he "is imprisoned in
connection with a conviction."  He relies on the Dictionary
Act, which provides that "[i]n determining the meaning of
any Act of Congress, unless the context indicates other-
wise[,] words used in the present tense include the future

––––––––––

[1] Our reading leaves intact a district court's ability to preserve its
authority by issuing an arrest warrant or summons under §3583(i)
based on the conduct at issue in the new charges, irrespective of whether
the defendant is later convicted or acquitted of those offenses.  But
preserving jurisdiction through §3583(i) is not a prerequisite to a court
maintaining authority under §3624(e), nor does it impact the tolling
calculation under §3624(e).

as well as the present." 1 U. S. C. §1.

Mont's argument confuses the rule ("any period in which the person is imprisoned in connection with a conviction") with a court's analysis of whether that rule was satisfied. Of course, the determination whether supervised release has been tolled cannot be made at the exact moment when the defendant is held in pretrial detention. Rather, the court must await the outcome of those separate proceedings before it will know whether "imprison[ment]" is tied to a conviction. But the statute does not require the court to make a contemporaneous assessment. Quite the opposite: As discussed, the statute undeniably contemplates that there will be uncertainty about the status of supervised release when a defendant has been held for a short period of time and it is unclear whether the imprisonment will exceed 30 days. There is no reason the statute would preclude postponing calculation just because the custody period extends beyond 30 days. Once the court makes the calculation, it will determine whether the relevant period ultimately qualified as a period "in which the person is imprisoned in connection with a conviction" for 30 or more days. In short, the present-tense phrasing of the statute does not address whether a judge must be able to make a supervised-release determination at any given time.

Moreover, any uncertainty about whether supervised release is tolled matters little from either the court's or the defendant's perspective. As for the court, the defendant need not be supervised when he is held in custody, so it does not strike us as "odd" to make a delayed determination concerning tolling. *Marsh, supra,* at 710. The court need not monitor the defendant's progress in transitioning back into the community because the defendant is not *in* the community. And if the court is concerned about losing authority over the defendant because of an impending conclusion to supervised release, it can simply issue a summons or warrant under §3583(i) for alleged violations.

As for the defendant, there is nothing unfair about not knowing during pretrial detention whether he is also subject to court supervision. The answer to that question cannot meaningfully influence his behavior. A defendant in custody will be unable to comply with many ordinary conditions of supervised release intended to reacclimate him to society—for example, making restitution payments, attending substance-abuse counseling, meeting curfews, or participating in job training. The rules he can "comply" with are generally mandated by virtue of being in prison— for example, no new offenses or use of drugs. See §§3563(a)–(b) (listing mandatory and discretionary conditions). In this case, Mont's supervised-release conditions required that he "work regularly at a lawful occupation" and "support his . . . dependants and meet other family responsibilities." Judgment in No. 4:05–cr–00229 (ND Ohio), Doc. 37, at 111. Mont could not fulfill these conditions while sitting in an Ohio jail, and his probation officer correctly deemed him "unavailable for supervision."[2] App. 21.

### III

Applying §3624(e) to Mont, the pretrial-detention period tolled his supervised release beginning in June 2016. Mont therefore had about nine months remaining on his term of supervised release when the District Court revoked his supervised release and sentenced him to an

--------

[2] Although a defendant in pretrial detention is unable to be supervised, it does not necessarily follow that the defendant will be punished by his inability to comply with the terms of his supervised release if the detention period is *not* later credited as time served for a conviction. In that circumstance, the district court may always modify the terms of his supervision. See 18 U. S. C. §3583(e)(2). And, as the Government explained at oral argument, modification of supervised release may not be necessary to the extent that "the defendant can't be deemed to have been required to" comply with the terms of supervised release while in custody. Tr. of Oral Arg. 45.

additional 42 months' imprisonment. And because §3624(e) independently tolled the supervised-release period, it is immaterial whether the District Court could have issued a summons or warrant under §3583(i) to preserve its authority.

\*    \*    \*

In light of the statutory text and context of §3624(e), pretrial detention qualifies as "imprison[ment] in connection with a conviction" if a later imposed sentence credits that detention as time served for the new offense. Such pretrial detention tolls the supervised-release period, even though the District Court may need to make the tolling determination after the conviction. Accordingly, we affirm the judgment of the Sixth Circuit.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–8995

_____

## JASON J. MONT, PETITIONER _v._ UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 3, 2019]

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER, JUSTICE KAGAN, and JUSTICE GORSUCH join, dissenting.

A term of supervised release is tolled when an offender "is imprisoned in connection with a conviction." 18 U. S. C. §3624(e). The question before the Court is whether pretrial detention later credited as time served for a new offense has this tolling effect. The Court concludes that it does, but it reaches that result by adopting a backward-looking approach at odds with the statute's language and by reading the terms "imprisoned" and "in connection with" in unnatural isolation. Because I cannot agree that a person "is imprisoned in connection with a conviction" before any conviction has occurred, I respectfully dissent.

## I

### A

The Sentencing Reform Act of 1984 empowers a court to impose a term of supervised release following imprisonment. See 18 U. S. C. §§3583(a), (b).

The clock starts running on a supervised release term when the offender exits the jailhouse doors. §3624(e). During the term, offenders are bound to follow court-imposed conditions. Some apply to all supervised release terms, such as a requirement to refrain from committing other crimes. §3583(d). Others apply only at a sentencing court's discretion, such as a condition that the offender

allow visits from a probation officer. See §3563(b)(16); §3583(d). The probation officer, in turn, is tasked with monitoring and seeking to improve the offender's "conduct and condition" and reporting to the sentencing court, among other duties. §3603. During the supervised release term, the court has the power to change its conditions and to extend the term if less than the maximum term was previously imposed. §3583(e)(2). If an offender violates any of the conditions of release, the court can revoke supervised release and require the person to serve all or part of the supervised release term in prison, without giving credit for time previously served on postrelease supervision. §3583(e)(3).

In the normal course, a supervised release term ends after the term specified by the district court. But, crucially, the term "does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." §3624(e). In other words, certain periods of "imprisonment" postpone the expiration of the supervised release term.

A district court's revocation power generally lasts only as long as the supervised release term. If the court issues a warrant or summons for an alleged violation before the term expires, however, the court's revocation power can extend for a "reasonably necessary" period beyond the term's expiration. §3583(i).

### B

Though the mechanics of supervised release tolling may seem arcane, these calculations can have weighty consequences. For petitioner Jason Mont, tolling enabled a court to order an additional 3½ years of federal imprisonment after he serves his current state sentence.

Mont was convicted in 2005 for federal drug and gun crimes. The District Court sentenced him to prison time

and to five years of supervised release. In 2012, Mont was released from prison and his supervised release term began. Left to run its course, the term would have ended on March 6, 2017.[1]

Mont's time on supervised release did not go well. In January 2016, his probation officer informed the District Court that Mont had failed two drug tests and tried to pass two further drug tests by using an "'unknown'" liquid. 723 Fed. Appx. 325, 326 (CA6 2018). The officer noted that Mont also had been charged with state marijuana-trafficking offenses. Upon learning of these alleged violations of the supervised release conditions, the District Court could have issued a warrant for Mont's arrest, but it did not do so at that time.

On June 1, 2016, Mont was arrested on a new state indictment for trafficking cocaine, and the State took him into custody. The probation officer reported the arrest to the District Court, but the record does not reflect any action by the court in response. After several months in custody, Mont pleaded guilty to certain of the state charges. He also admitted to the District Court that he had violated the terms of his supervised release, and he requested a hearing. The District Court set a November hearing to consider his alleged supervised release violation, but continuances delayed that hearing. Months more passed as Mont, still detained, awaited sentencing. In the meantime, the original end date of his federal supervised release term—March 6, 2017—came and went. On March 21, 2017, the state court sentenced Mont to six years in prison and retroactively credited the approximately 10 months he had spent in pretrial detention toward his sentence.

––––––––

[1] I accept the dates as given in the Sixth Circuit's opinion, although that opinion notes some immaterial discrepancies in the record. See 723 Fed. Appx. 325, 326, nn. 1–2 (2018).

At that point, Mont's probation officer reported Mont's state convictions and sentences to the Federal District Court, which—after its many earlier opportunities—finally issued a warrant for Mont's arrest on March 30, 2017.  Mont objected, claiming that the court had no power to issue the warrant because his supervised release term had expired on March 6.  The District Court rejected that contention and sentenced Mont to 42 months in prison, to run consecutively to his state sentence.[2]

The United States Court of Appeals for the Sixth Circuit affirmed.  In its view, the District Court had jurisdiction to revoke Mont's supervised release because his pretrial detention triggered the tolling provision in §3624(e) and thus shifted back the end date of his supervised release term.  The Sixth Circuit construed the tolling provision to apply to Mont's detention because his state-court indictment ultimately led to a conviction and Mont subsequently received credit for the period of detention as time served for that conviction.

II

The majority errs by affirming the Sixth Circuit's construction of the tolling statute.  Most naturally read, a person "is imprisoned in connection with a conviction" only while he or she serves a prison term after a conviction.  The statute does not allow for tolling when an offender is in pretrial detention and a conviction is no more than a possibility.

The first clue to the meaning of §3624(e) is its present-tense construction.  In normal usage, no one would say

_____

[2] The District Court held that it had jurisdiction because of a summons it issued on November 1, 2016, which would have given the court power to sanction a supervised release violation even after the term expired.  See 18 U. S. C. §3583(i).  The Sixth Circuit did not affirm on this ground, however, because it "failed to detect any . . . evidence in the record" of a November 2016 summons.  723 Fed. Appx., at 329, n. 5.

that a person "is imprisoned in connection with a conviction" before any conviction has occurred, because the phrase would convey something that is not yet—and, indeed, may never be—true: that the detention has the requisite connection to a conviction. After all, many detained individuals are never convicted because they ultimately are acquitted or have their cases dismissed.[3] Until a conviction happens, it is impossible to tell whether any given pretrial detention is "connect[ed] with" a conviction or not.

Reading the phrase "is imprisoned" to require a real-time assessment of the character of a conviction does not just match the colloquial sense of the phrase; it also gives meaning to the tense of the words Congress chose. The Court generally "look[s] to Congress' choice of verb tense to ascertain a statute's temporal reach." *Carr* v. *United States*, 560 U. S. 438, 448 (2010). Doing so abides by the Dictionary Act, which provides that "words used in the present tense include the future as well as the present" absent contextual clues to the contrary, 1 U. S. C. §1, and thus "the present tense generally does not include the past," *Carr*, 560 U. S., at 448. Applying this presumption here leads to the straightforward result that the phrase "is imprisoned" does not mean "was imprisoned." Adhering to the present-tense framework of the statute, then, pretrial detention does not meet the statutory definition, no matter what later happens.

The other language in §3624(e)—"imprisoned in connection with a conviction"—confirms this result. Had Con-

—————

[3] See Dept. of Justice, Office of Justice Programs, Bureau of Justice Statistics, T. Cohen & B. Reaves, Pretrial Release of Felony Defendants in State Courts; State Court Processing Statistics, 1990–2004, p. 7 (Nov. 2007) (roughly one in five defendants held in pretrial detention for state felony charges conclude their cases without a conviction), https://www.bjs.gov/content/pub/pdf/prfdsc.pdf (as last visited May 30, 2019).

gress wanted to toll supervised release during pretrial confinement, it could have chosen an alternative to the word "imprisoned" that more readily conveys that intent, such as "confined" or "detained." See Black's Law Dictionary 362 (10th ed. 2014) (defining "confinement" as "the quality, state, or condition of being imprisoned or restrained"); *id.*, at 543 (defining "detention" as "[t]he act or an instance of holding a person in custody; confinement or compulsory delay"). Instead, Congress selected a word— "imprisoned"—that is most naturally understood in context to mean postconviction incarceration.

Congress regularly uses the word "imprisoned" (or "imprisonment") to refer to a prison term following a conviction. The United States Code is littered with statutes providing that an individual shall be "imprisoned" following a conviction for a specific offense. See, *e.g.*, 18 U. S. C. §§1832, 2199, 2344. Congress also classifies crimes as felonies, misdemeanors, or infractions based on "the maximum term of imprisonment authorized." §3559(a). And even in the Sentencing Reform Act itself, which added the tolling provision at issue, Congress used the word "imprisonment" to refer to incarceration after a conviction. See §3582(a) (describing the factors courts consider when imposing "a term of imprisonment"); §3582(b) (referring to "a sentence to imprisonment"); §3582(c)(1)(B) (discussing when courts may "modify an imposed term of imprisonment").

This Court also has previously equated the word "imprisonment" with a "prison term" or a "sentence"—phrases that imply post-trial detention. See *Tapia* v. *United States*, 564 U. S. 319, 327 (2011) (referring in passing to "imprisonment" as a "prison term"); *Barber* v. *Thomas*, 560 U. S. 474, 484 (2010) ("[T]erm of imprisonment" can refer "to the sentence that the judge imposes" or "the time that the prisoner actually serves" of such a sentence); see also *Argersinger* v. *Hamlin*, 407 U. S. 25, 37 (1972) ("[N]o

person may be imprisoned for any offense . . . unless he was represented by counsel at his trial").

To be sure, dictionary definitions of the word "imprison" sweep more broadly than just post-trial incarceration. See *ante*, at 6. But the word "imprisoned" does not appear in this statute in isolation; Congress referred to imprisonment "in connection with a conviction." As part of that phrase and given its usual meaning, the word "imprisoned" is best read as referring to the state of an individual serving time following a conviction.

The present tense of the statute and the phrase "imprisoned in connection with a conviction" thus lead to the same conclusion: Pretrial detention does not toll supervised release.[4]

## III

The majority justifies a contrary interpretation of the tolling provision only by jettisoning the present-tense view of the statute and affording snippets of text broader meaning than they merit in context.

The majority's first error is its conclusion that courts can take a wait-and-see approach to tolling. If a conviction ultimately materializes and a court credits the offender's pretrial custody toward the resulting sentence, the majority reasons, then the pretrial detention retroactively will toll supervised release. If not, then there will be no tolling. See *ante*, at 6–8. The offender's supervised

—————

[4] I note that rejecting the Sixth Circuit's contrary interpretation of the statute would not necessarily resolve this case in Mont's favor. The Government views Mont's guilty plea as a "conviction" and thus argues that his supervised release should, at the least, have been tolled during the five months he was detained between his plea and sentencing. See Brief for United States 39–44. Because the Sixth Circuit did not directly address whether a guilty plea constitutes a "conviction," the appropriate course would be to remand to the Sixth Circuit to consider this argument in the first instance. See, *e.g.*, *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005).

release status thus will be uncertain until the court calcu-
lates tolling either "upon the defendant's release from
custody or upon entry of judgment." *Ante,* at 8.

The majority's retrospective approach cannot be squared
with the language of §3624(e). Because Congress phrased
the provision in the present tense, the statute calls for a
contemporaneous assessment of whether a person "is
imprisoned" with the requisite connection to a conviction.
The majority erroneously shifts the statute's frame of
reference from that present-tense assessment (what is) to
a backward-looking review (what was or what has been).[5]

The majority's textual argument hinges on what the
majority perceives to be an advantage of the retrospective
approach: It accounts for the fact that the statute provides
for tolling only if a period of imprisonment lasts longer
than 30 days. §3624(e). According to the majority, the 30-
day provision shows Congress' expectation that courts look
backwards when evaluating whether tolling is appropri-
ate. If Congress anticipated such an analysis as to the
length of the detention, the majority implies, surely it
provided more generally for backward-looking review of
the relationship between the detention and any ensuing
conviction. See *ante,* at 8.

This argument, however, assumes a problem of the
majority's own making. The 30-day minimum creates no
anomalies if the statute is read to toll supervised release
only during detention following a conviction. Under that

────────────

[5] Although Congress did not use a phrase like "was imprisoned" or
"has been imprisoned" in this provision, it did employ such formula-
tions in several other tolling provisions. See 38 U. S. C. §3103(b)(3)
(eligibility period "shall not run" during any period in which a veteran
"was . . . prevented" from accessing a rehabilitation program); §3031(b)
(time period "shall not run" during a period in which an individual "had
not met" a discharge requirement); 29 U. S. C. §1854(f) (statute of
limitations for a federal claim "shall be tolled" for the period in which a
related state-law claim "was pending").

more natural reading, courts in most cases will not be left in the dark about the length of a period of detention or its relationship to a conviction; the conviction and sentence of imprisonment at the time imposed will answer both questions.[6]

Under the majority's approach, however, this language creates a dilemma. Unlike a term of imprisonment following a conviction, the duration of pretrial confinement is uncertain at its outset. Thus if (as the majority contends) Congress meant to toll such periods of detention, the 30-day limitation means that every single time a person on supervised release enters detention, it will be unclear for up to a month whether the supervised release term is being tolled or not. See *ante*, at 8 (conceding that there will be "no way for a court to know on day 5 of a defendant's pretrial detention whether the period of custody will extend beyond 30 days"). If pretrial detention lasts longer than 30 days, the uncertainty will continue until a judgment of conviction is entered and credit for pretrial detention is computed.

But the difficulties inherent in predicting how long pretrial detention will last (and whether that detention eventually will turn out to have any connection to a conviction, see *supra,* at 4–5, and n. 3) most naturally compel the conclusion that Congress never intended to force district courts to grapple with them in the first place. These uncertainties generally would not arise—and courts thus would not need to rely on hindsight—if the Court were to

---

[6] The Government gestures to some uncertainties inherent in predicting the length of imprisonment even following a conviction, such as the presence of indeterminate sentencing schemes and the possibility that a determinate sentence can be shortened or interrupted temporarily. See Brief for United States 34–35 (citing 18 U. S. C. §§3621(e)(2)(B), 3622). However, these provisions in no way suggest that a court regularly would find itself unsure whether a prisoner's sentence will extend past 30 days.

adopt Mont's reading. Yet the majority instead takes as a given that the statute tolls supervised release during pretrial detention, and then uses the uncertainties inherent in that process to justify a backward-looking analysis.

The majority's error is compounded by the centerpiece of its textual analysis, which relies on artificially isolating the terms "imprisoned" and "in connection with." The majority says that imprisonment is a term so capacious as to encompass pretrial detention, *ante*, at 6–7, and that the phrase "in connection with" sweeps broadly enough to include pretrial detention that is ultimately credited to a new sentence, *ante*, at 7.

Whether or not these phrases independently have the far-reaching meaning that the majority ascribes to them— a conclusion that is by no means inevitable—the terms are still limited by their relationship to each other and by the present-tense framework of the statute. Individual phrases must not be taken "'in a vacuum,'" because doing so overrides the "'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Home Depot U. S. A., Inc.* v. *Jackson, ante*, at ___ (slip op., at 5) (quoting *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989)). As discussed, in the context of a phrase referring to conviction, the term "imprisoned" most naturally means imprisonment following a conviction. *Supra*, at 5–7. And seen from the point at which a person is detained and awaiting a verdict, his confinement is not "in connection with" a conviction that has not happened and may never occur.

## IV

The majority's approach has the further flaw of treating tolling as the only meaningful avenue to preserve a district court's revocation power when an offender is detained pretrial. But the statute already provides a way for a

court to extend its revocation power: If a court issues a warrant or summons while the supervised release term is running, that action triggers an extension of the court's revocation authority "beyond" the supervised release term "for any period reasonably necessary for the adjudication" of the matters that led to the warrant or summons. See §3583(i).

In this very case, the District Court had at least three opportunities to issue a warrant prior to the expiration of Mont's original supervised release term. Mont's probation officer notified the District Court of Mont's potential supervised release violations in January 2016, more than a year before Mont's supervised release was set to expire. 723 Fed. Appx. 325, 326 (CA6 2018). In June 2016, the probation officer alerted the District Court to Mont's arrest. *Ibid.* And in October 2016, Mont filed a written admission with the District Court that he had violated supervised release. *Id.*, at 326–327. The District Court was empowered at each step of this process to issue a warrant. Indeed, the court apparently intended to do just that after Mont's written admission, though the Sixth Circuit later found that there was no evidence of such a warrant in the record. See *id.*, at 329, n. 5.

In sum, the delayed revocation process provides a straightforward, and statutorily prescribed, path for district courts to decide which charges are significant enough to justify a warrant and thus to extend the court's revocation power. The majority's overly broad reading of the tolling provision is thus unnecessary as well as a distortion of the clear statutory text.

V

Lacking a strong textual basis for its backward-looking analysis, the majority is left to rely on intuitions about how best to fulfill the statute's purpose.

To begin with, the majority emphasizes that supervised

release and incarceration have different aims. See *ante*, at
8–10. True enough. The Court has explained that super-
vised release is intended "to assist individuals in their
transition to community life," and as a result is not "inter-
changeable" with periods of incarceration. *United States*
v. *Johnson*, 529 U. S. 53, 58–60 (2000). But the goals of
supervised release can be fulfilled to some degree even
when an offender is detained. Cf. *Burns* v. *United States*,
287 U. S. 216, 223 (1932) (noting that a probationer is still
"subject to the conditions of" probation "even in jail").
Offenders on supervised release may well be able to com-
ply with several mandatory conditions of supervised re-
lease while detained, such as submitting to a DNA sample
or taking drug tests. See §3583(d). And probation officers
have experience coordinating with correctional facilities in
the prerelease context. See §3624(c)(3) (providing that the
probation system "shall, to the extent practicable, offer
assistance to a prisoner during prerelease custody").

Even if an offender's detention does make it meaningfully
harder to fulfill the goals of supervised release, moreover,
the majority's reading permits the same incongruities.
Under the majority's interpretation, supervised release
continues to run for offenders who are confined pretrial for
less than 30 days and for those who are detained pretrial
but are later acquitted or released after charges are
dropped. See Tr. of Oral Arg. 34.[7] At best, the majority

——————

[7] Imagine two offenders on supervised release and detained pending
trial on similar charges who receive precisely the same supervision
during their detention. One ultimately is convicted and the other's
charges are dismissed on statute of limitations grounds. Today's
decision means that the detention time for the convicted person will not
count toward his or her supervised release term, even though the
detention of the other person—who was detained for similar conduct
and received the same monitoring and supervision—will count down
the supervised release clock. The better practice is to read the statute
on its plain terms and rely on a district court's power to clarify any
ambiguity in its authority by issuing a warrant when an alleged super-

offers a half-a-loaf policy rationale that cannot justify departing from the best reading of the statute's text.

The majority also invokes the general principle against double-counting sentences, see, *e.g.*, §3585(b), and objects that Mont's reading of the statute would give defendants a "windfall." *Ante*, at 9–10. This argument, however, fails to recognize the distinct character of pretrial detention. Its purpose is to ensure that an alleged offender attends trial and is incapacitated if he or she is a danger to the community, not to punish the offender for a conviction. See *United States* v. *Morales-Alejo*, 193 F. 3d 1102, 1105 (CA9 1999) (citing §3142(c); *United States* v. *Salerno*, 481 U. S. 739, 748 (1987)). A State or the Federal Government may later choose to credit an equivalent period of time toward a new sentence, but that credit does not retroactively transform the character of the detention itself into "imprison[ment] in connection with a conviction," §3624(e)—particularly in the context of this present-tense statute.

In any event, the majority's approach creates a serious risk of unfairness. Offenders in pretrial detention will have no notice of whether they are bound by the terms of supervised release. This effectively compels all offenders to comply with the terms of their release, even though only some will ultimately get credit for that compliance, because otherwise they risk being charged with a violation if their supervised release term is not tolled.[8] Although the majority indicates that offenders generally will comply with the terms of their release simply by following prison rules, the range of supervised release conditions is too

_____

vised release violation is sufficiently serious. See §3583(i).

  [8] The majority suggests that offenders will not necessarily face punishment for a failure to comply with supervision conditions while in detention. *Ante*, at 12, n. 2. Given the consequences of revocation, however, offenders may well be unwilling to take that chance. See *supra,* at 2; §3583(e)(3).

broad to guarantee complete overlap with prison directives. See, *e.g.,* Doherty, Indeterminate Sentencing Returns: The Invention of Supervised Release, 88 N. Y. U. L. Rev. 958, 1012–1013 (2013) (describing mandatory condition of cooperating in DNA collection and special conditions of taking prescribed medications and undergoing periodic polygraph testing). Altogether, I am not nearly as sanguine as the majority that the uncertainty created by the majority's expansive tolling rule "matters little from either the court's or the defendant's perspective." *Ante*, at 11.

\* \* \*

The Court errs by treating Mont's pretrial detention as tolling his supervised release term. Because its approach misconstrues the operative text and fosters needless uncertainty and unfairness, I respectfully dissent.