**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2444
_____

UNITED STATES OF AMERICA

v.

RONALD DAMON,
                            Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-06-cr-00471-001)
District Judge: Hon. Freda L. Wolfson
_____

Argued June 5, 2019

Before: JORDAN, BIBAS, and MATEY, *Circuit Judges*.

(Filed: August 6, 2019)


Richard Coughlin
Julie A. McGrain (Argued)
Office of the Federal Public Defender

800-840 Cooper Street, Suite 350
Camden, New Jersey 08102
  *Counsel for Appellant*

Craig Carpenito
Mark E. Coyne
John F. Romano (Argued)
Office of the United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102

Jason M. Richardson
Office of the United States Attorney
401 Market Street
Camden, New Jersey 08101
  *Counsel for Appellee*

_____

OPINION
_____

MATEY, *Circuit Judge*.

Ronald Damon signed a plea agreement with the United States accepting responsibility for a federal crime. He served time in custody and left prison. Now, having reentered society, he wants a fresh start, free from further oversight by the federal government. So Damon asked to end his term of supervised release a few years early. He offered facts and circumstances justifying his request, and highlighted the hardships imposed by restrictions on his activities. But Damon's present desires are controlled by a past decision: his contract with the

government containing the terms and conditions of his guilty plea. Because his plea agreement precludes challenges to his sentence, and because any shortening of his supervision would amount to a change in his sentence, we will affirm the decision of the District Court.

## I. The Proceedings Before the District Court

### A. The Written Plea Agreement

The facts are not in dispute. Damon pleaded guilty to knowingly and intentionally distributing and possessing with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (as amended in 2006) and 18 U.S.C. § 2. As is customary in federal criminal practice, the Government and Damon memorialized their agreement in writing. The plea agreement includes a provision stating that both parties "waive certain rights to file an appeal, collateral attack, writ or motion after sentencing, including, but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255." (App. at 22.) Schedule A to the plea agreement provides:

> Ronald Damon knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33.

3

(*Id.* at 26.) The agreement also states that, "in addition to imposing any other penalty on Ronald Damon, the sentencing judge . . . pursuant to 21 U.S.C. § 841, must require Ronald Damon to serve a term of supervised release of at least 5 years, which will begin at the expiration of any term of imprisonment imposed." (*Id.* at 21.)

Both Damon and the Government executed the plea agreement. Following Federal Rule of Criminal Procedure 11(b)(1), the District Judge explained the agreement, including the maximum penalties, fines, and period of supervised release. And as required by Federal Rule of Criminal Procedure 11(b)(1)(N), the District Court asked Damon whether he understood that he was "giving up [his] right to file an appeal or otherwise attack the sentence that may be imposed in this matter" and Damon agreed. (*Id*. at 42–43.) A portion of their exchange is illustrative:

> The Court:  Do you understand that by the terms of the plea agreement both you and the government have given up the right to file an appeal or post-conviction relief under certain circumstances that are set forth in the plea agreement itself and in Schedule A to the plea agreement? I referred you to those provisions before. Do you understand that?
>
> The Defendant: Yes.
>
> The Court: Did you discuss with your attorney this waiver of appeal and waiver of your right to file for post-conviction relief?
>
> The Defendant: Yes.

The Court: And are you satisfied with the explanations that your attorney provided?

The Defendant: Yes.

The Court: And do you agree with those waivers of appeal and waiver of your right to file for post-conviction relief?

The Defendant: Yes.

(App. at 56–57.) The District Court found that the plea was "knowingly and voluntarily made" and accepted the plea. (*Id.* at 58–59.)

### B. Damon is Sentenced According to the Plea

Having pleaded guilty, Damon faced 262–327 months' imprisonment under the advisory Sentencing Guidelines. Upholding its end of the deal, the Government filed a motion for a downward departure under U.S.S.G. § 5K1.1, which the Court weighed favorably in sentencing Damon to 144 months' imprisonment. The District Court also imposed the required five-year term of supervised release, a $2,000 fine, and a special assessment of $100.

### C. Damon Asks for an Early End to Supervised Release

After serving his prison term and about thirty-two months of his sixty-month term of supervised release, Damon sought to terminate the remainder of his supervision. The District Court found that the waiver provision of the plea

5

agreement barred Damon's request, and denied his application. Damon timely appealed.[1]

## II. The Plain Language of the Agreement Controls

On appeal, Damon acknowledges the waiver, but argues that it doesn't extend to his application. The Government disagrees and has moved for summary action to enforce the terms of the waiver and to dismiss this appeal, or alternatively, to affirm the District Court's order.

## A. Waiving the Right to Appeal

The parties' dispute is narrow. Damon agrees that his plea was both knowing and voluntary, eliminating constitutional concerns. And he does not dispute that his plea agreement contains a waiver, so "we must decide whether the appellate waiver before us bars this appeal." *United States v. Wilson*, 707 F.3d 412, 414 (3d Cir. 2013). Waivers in plea agreements are neither new nor unusual, and we have long enforced their terms. *See United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001). But a waiver only bars an appeal that falls inside its scope. *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019). We will enforce an appellate waiver in a plea agreement and decline to review the merits of Damon's appeal

---

[1] The District Court had subject matter jurisdiction over Damon's motion under 18 U.S.C. § 3231 and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We exercise plenary review to decide whether a defendant's appeal falls within the scope of a waiver provision in a plea agreement. *United States v. Goodson*, 544 F.3d 529, 537, n.6 (3d Cir. 2008).

only "if we conclude (1) that the issues [Damon] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008). Damon aims his arguments at the first step in this test and we use familiar principles of interpretation to review.

## B. Damon Identifies no Ambiguity in the Agreement

We begin by noting what Damon does not argue. Damon states that the plea agreement bars a direct appeal of his sentence. And he maintains that the "waiver bars an appeal of any component of punishment imposed at the original sentencing proceeding, including the terms and conditions of supervised release." (Opening Br. at 9.) Instead, he reasons that his present motion for early termination of his supervised release falls outside the waiver on temporal and factual grounds, labeling it as a motion for post-sentencing relief. In other words, Damon does not see a textual hook in the plea agreement that would allow for a reduced term of supervised release as part of his bargain. Rather, he sees an opening in the logic behind the text, arguing that the agreement should best be construed to allow a fresh examination of his progress based on the most recent information.

Our task is one of interpretation, "guided by the 'well-established principle that plea agreements, although arising in the criminal context, are analyzed under contract law standards.'" *Corso*, 549 F.3d at 927 (quoting *Goodson*, 544 F.3d at 535 n.3) (internal quotation marks omitted). Thus, "we begin our analysis as we would with any contract," by "examin[ing] first the text of the contract." *United States v. Gebbie*, 294 F.3d 540, 545 (3d Cir. 2002). "Because we apply

7

rules of contract interpretation to plea agreements, the first step is to decide whether the plea agreement is ambiguous or unambiguous. A contract is ambiguous if it is capable of more than one reasonable interpretation." *Id.* at 551 (internal quotation marks omitted).

In the agreement, Damon waived the right to file "any appeal . . . which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33." (App. at 26.) Damon's sentence fell within this Guidelines range. So the waiver governs if the "sentence imposed" on Damon includes the term of his supervised release and if this appeal "challenges" that sentence. (*Id.*)

### 1. The Term "Sentence" in Damon's Plea Agreement Refers to All Penalties

We focus not on intent, but on words, as "the language of a waiver, like the language of a contract, matters greatly." *Goodson*, 544 F.3d at 535. And the word "sentence" is commonly understood to encompasses all penalties imposed on a defendant, which can include penalties beyond imprisonment. *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1302, 1597 (5th ed. 2018) (defining "sentence" as "[t]he penalty imposed by a law court or other authority upon someone found guilty of a crime or other offense" and defining "penalty" as "[a] punishment imposed for a violation of law."); WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1180, 1323 (5th ed. 2018) (defining "sentence" as "a decision or judgment, as of a court; esp., the determination by a court of the punishment of a convicted person" or "punishment itself" and defining "punishment" as "a penalty imposed on an offender for a crime or wrongdoing"); BLACK'S

LAW DICTIONARY 1428, 1569 (10th ed. 2014) (defining "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer" and defining "punishment" as "[a] sanction — such as a fine, penalty, confinement, or loss of property, right, or privilege — assessed against a person who has violated the law."). The ordinary meaning of "sentence" can only reasonably be read to include all forms of punishment or penalties imposed on a defendant. By extension, Damon's "sentence" must be read to include the term of his supervised release, bringing Damon's challenge within the scope of the bargained-for waiver.

The structure of the plea agreement confirms this common understanding of "sentence." Under the heading "Sentencing," the plea agreement provides that the sentencing judge will impose penalties that include, at a minimum: (1) imprisonment; (2) a fine; (3) forfeiture; and (4) a term of supervised release. (App. 20–21.) The plea agreement also made clear that "pursuant to 21 U.S.C. § 841," the sentencing judge "must require Ronald Damon to serve a term of supervised release of at least 5 years, which will begin at the expiration of any term of imprisonment imposed." (*Id.* at 21.) Section 841(b)(1)(A), in turn, states that "any sentence under this subparagraph shall . . . impose a term of supervised release of at least 5 years in addition to such term of imprisonment." Construing the language of the plea agreement in a "manner that gives meaning to each provision," as we must, the term "sentence" unambiguously includes the imposition of a term of supervised release. *United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005).

Reading "sentence" to include a term of supervised release also agrees with our prior holdings. In *Goodson*, we

held that the defendant's appellate waiver "encompassed his right to appeal the conditions of his supervised release." 544 F.3d at 538. Construing the appellate waiver presented, we rejected the defendant's contention "that the waiver's use of the term 'sentence' should be construed to mean only the term of incarceration" and held that "the duration, as well as the conditions of supervised release are components of a sentence." *Id*. at 537–38. "Under chapter 227 of the Federal Crimes Code, the period of incarceration is but one component of a sentence. Other components may be probation under § 3561, supervised release under § 3583, a fine under § 3571, and/or restitution under § 3556." *Id*. at 537. Indeed, Section 3583(a) provides that a court "may include as a *part* of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." *Id*. (quoting 18 U.S.C. § 3583(a)) (emphasis in original). Thus, we concluded that "the text of the waiver . . . establishes that the term 'sentence' as used in [defendant's] appellate waiver applies to not only the period of incarceration that will be imposed, but also any other component of punishment." *Id.* at 538; *see also United States v. Island*, 916 F.3d 249, 252 (3d Cir. 2019) ("[T]he supervised release term constitutes part of the original sentence") (internal quotations omitted); *Wilson*, 707 F.3d at 414 ("the word 'sentence' in a broad appellate waiver . . . includes the terms and conditions of supervised release and, therefore, bars appeals challenging those terms and conditions."). The "sentence imposed" on Damon likewise encompassed the duration of his supervised release.[2]

---

[2] Our reading of the "sentence imposed" on Damon also tracks the Supreme Court's understanding that supervised

### 2. Damon's Waiver Bars "Challenges" to the Term of his Supervised Release

In the agreement, Damon waived the right to file any motion or appeal that "challenges the sentence imposed." (App. at 26.) Damon seeks to evade this language by arguing that his motion is not a challenge to his sentence, but a motion filed in a separate chronological phase and in a different proceeding. But this argument is unsupported by the text of the plea agreement and by any sound understanding of what is included in a sentence. Supervised release is, as just explained, part of the sentence that Damon received.

The verb "challenges" in the legal context is generally understood to mean "to dispute or call into question." BLACK'S LAW DICTIONARY 279 (10th ed. 2014); *see also* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 307 (5th ed. 2018) (defining "challenge" as a "formal objection" or a legal action "testing the validity of an action, particularly by the government."); WEBSTER'S NEW WORLD COLLEGE DICTIONARY 248 (5th ed. 2018) (defining "challenge" as "a calling into question; a demanding of proof [or] explanation."). Damon's motion does just that, questioning his original sentence by seeking to shorten the term

_____

release is just one component of a sentence. *See United States v. Haymond*, 139 S. Ct. 2369, 2379 (2019) (plurality opinion) ("[a]n accused's final sentence includes any supervised release sentence he may receive[.]"); *Mont v. United States*, 139 S. Ct. 1826, 1834 (2019) ("Supervised release is a form of punishment that Congress prescribes along with a term of imprisonment as part of the same sentence.").

11

of his supervised release. By its very nature, it is a challenge to the sentence imposed.

Although this Court has not addressed the term "challenges" in the context of a motion to terminate supervised release brought under § 3583(e)(1), the Sixth Circuit decision in *United States v. Scallon*, 683 F.3d 680 (6th Cir. 2012) is instructive. There, the Sixth Circuit held that "[t]he sorts of challenges [defendant] brought in his § 3583(e)(2) motion could have been raised on direct appeal or as part of a collateral attack, and [defendant] unequivocally waived both of those options in his written plea agreement." *Scallon*, 683 F.3d at 683–84. The Sixth Circuit therefore held that "a defendant's appeal from the denial of his § 3583(e)(2) motion falls within the scope of a broadly-worded appeal waiver like [the defendant's]." *Id.* at 684. Likewise, the "Sentencing" portion of Damon's plea agreement noted the requirement that he serve "a term of supervised release of at least 5 years." (App. at 21.) He cannot now challenge the term of his supervised release by reframing it as a post-sentence modification.

## C. Damon is Bound by His Bargain with the Government

As with any contract, Damon and the Government are held to the negotiated terms of their agreement. To interpret the waiver as Damon urges would stretch its ordinary meaning beyond normal usage. So "we have no difficulty in holding a defendant to the plea agreement [when] he seeks the benefits of it without the burdens." *United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007) (internal quotations and alterations omitted). Thus, "we must construe the phrase 'any appeal . . . which challenges the sentence imposed' to mean what it plainly states" *United States v. Banks*, 743 F.3d 56, 59 (3d Cir. 2014), and hold that Damon's challenge to the duration of his

12

supervised release falls within the scope of his appellate waiver.

Damon knowingly and voluntarily entered into a plea agreement with the government that provided him with certain undeniable benefits, most notably the Government's motion for a downward departure from the Sentencing Guidelines. Damon was sentenced to 144 months imprisonment, far lower than the 262 to 327 months of imprisonment he faced under the Guidelines. In return, the Government bargained for and received a guilty plea and waiver of "the right to file any appeal, any collateral attack, or any other writ or motion . . . which challenges the sentence imposed by the sentencing court." (App. at 26.) We find no issue that presents a miscarriage of justice. As we have cautioned, a contrary conclusion "would permit an end run around the waiver." *Wilson*, 707 F.3d at 415, n.2 (distinguishing between a defendant's ability to appeal a later-imposed sentence modification sought by the government from an appeal brought by the defendant to modify the terms of supervised release imposed as part of the original sentence).[3] So we will affirm the decision of the District Court and grant the Government's motion to the extent the District Court's order is affirmed.

---

[3] The Government also raises an important point: it is unclear that any reduction of supervised release would be appropriate because 18 U.S.C. § 841(b)(1)(A) imposes a mandatory minimum term of supervision. But we do not reach this issue. *See United States v. Gwinnett*, 483 F.3d 200, 206 (3d Cir. 2007).